UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**No. 12-3546**
_____

**UNION ELECTRIC COMPANY d/b/a AMEREN MISSOURI,**
**Plaintiff-Appellee,**

**v.**

**AEGIS ENERGY SYNDICATE 1225,**
**Defendant-Appellant.**
_____

Appeal from the United States District Court,
Eastern District of Missouri, Eastern Division
The Honorable Jean C. Hamilton, United States District Judge
_____

**BRIEF OF APPELLEE**
_____


Robert T. Haar
Lisa A. Pake
Susan E. Bindler
Haar & Woods, LLP
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 Telecopier

*Attorneys for Appellee*
*Union Electric Company*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Union Electric Company ("UEC") filed this suit against its insurer, AEGIS Energy Syndicate 1225 ("AEGIS"), seeking reimbursement for damages UEC paid to the State of Missouri and others as a result of the December 2005 breach of the upper reservoir of the Taum Sauk hydroelectric plant. Although UEC has paid almost $200 million to satisfy those claims, AEGIS has declined to pay UEC any of its policy limits of $25 million in excess of $136 million in underlying limits.

In response to UEC's suit, AEGIS moved to compel arbitration. The district court denied AEGIS's motion on the ground that the AEGIS policy does not require mandatory arbitration of policy disputes. The policy includes a "Policy Disputes" endorsement providing that Missouri law governs "any dispute" over coverage or interpretation of the policy provisions and that the parties agree to submit to the jurisdiction of the Missouri courts. Under Missouri law, mandatory arbitration provisions in insurance contracts are void and unenforceable as against public policy. Since it concluded that the policy did not provide for mandatory arbitration, the district court properly did not reach the question whether the FAA or the Convention would have required enforcement of such an agreement.

AEGIS has waived oral argument in its brief. Because the final brief in this appeal will be filed by AEGIS, UEC requests 15 minutes of argument to address AEGIS's reply brief or any questions from the Court.

i

## CORPORATE DISCLOSURE STATEMENT

Ameren Corporation is a publicly-held corporation and the sole parent company of Union Electric Company.

Appellate Case: 12-3546     Page: 3     Date Filed: 01/08/2013 Entry ID: 3992061

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ..................................................................................... i

CORPORATE DISCLOSURE STATEMENT ............................................. ii

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES ............................................................... v

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES .......................................................... 2

STATEMENT OF THE FACTS .......................................................... 3

SUMMARY OF ARGUMENT ........................................................... 9

ARGUMENT ............................................................................... 11

    Standard of Review .............................................................. 11

    A.    The AEGIS Policy Does Not Require Mandatory Arbitration ....... 11

        1.    Missouri Law Principles of Contract Interpretation Govern .. 11

        2.    Mandatory Arbitration Provisions in Insurance Policies Are Void and Unenforceable Under Missouri Law ................. 12

        3.    An Endorsement Takes Precedence Over the Form Conditions of the Policy .......................................... 16

        4.    AEGIS's Attempts to Resolve the Conflict Between Endorsement Two and Condition (M) Are Inconsistent and Unavailing ....................................................... 19

        5.    Any Ambiguity Must Be Construed in Favor of The Insured, UEC ................................................. 25

Appellate Case: 12-3546    Page: 4    Date Filed: 01/08/2013 Entry ID: 3992061

B.  Even If UEC and AEGIS Had Agreed to Mandatory
    Arbitration, the Missouri Uniform Arbitration Act
    Would Render the Arbitration Agreement Unenforceable ........... 26

    1.  By Virtue of the McCarran-Ferguson Act,
        the Federal Arbitration Act Does Not Preempt
        Section 435.350 RSMo ........................................................ 28

    2.  The Better Reasoned Authorities, Including Those
        of This Circuit, Hold the McCarran-Ferguson Act
        Applicable to the Convention as Implemented
        By The Convention Act ...................................................... 30

CONCLUSION ........................................................................................... 41

CERTIFICATE OF SERVICE ................................................................... 44

CERTIFICATE OF COMPLIANCE ........................................................... 44

iv

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Abco Tank & Mfg. Co. v. Fed. Ins. Co.*,
550 S.W.2d 193 (Mo. banc 1977)..........................................................17

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins.*,
242 F.3d 777 (8th Cir. 2001) ................................................................12

*American Home Assurance Co. v. Pope,*
591 F.3d 992 (8th Cir. 2010) ................................................................25

*American Insurance Assoc. v. Garamendi*,
539 U.S. 396 (2003)..............................................................................36

*Berthel Fisher & Company Financial Services, Inc. v. Larmon,*
695 F.3d 749 (8th Cir. 2012) ...........................................................11-12

*Chan v. Korean Air Lines, Ltd.,*
490 U.S. 122 (1989)..............................................................................34

*Cherichel v. Holder*,
591 F.3d 1002 (8th Cir.), *cert. denied,* 131 S.Ct. 74 (2010)...................35

*Conseco, Inc. v. National Union Fire Ins. Co.*,
2002 U.S. Dist. LEXIS 26554 (D. Ind. Jan. 15, 2002) ..........................27

*DeAtley v. Mutual of Omaha Ins. Co.,*
2012 WL 5476219 (8th Cir. Nov. 13, 2012) ....................................19-20

*ESAB Group, Inc. v. Zurich Ins. PLC,*
685 F.3d 376 (4th Cir. 2012) ................................................28, 32-33, 37

*Foster v. Neilson*,
27 U.S. 253, 2 Pet. 253 (1829)...............................................................33

*Frontera Resources Azerbaijan Corp. v.  State Oil Co. of the*
*Azerbaijan Republic,* 582 F.3d 393 (2d Cir. 2009)................................24

Appellate Case: 12-3546     Page: 6     Date Filed: 01/08/2013 Entry ID: 3992061

*Grable v. Atlantic Cas. Ins. Co.*,
   280 S.W.3d 104 (Mo.App. E.D. 2009) .............................................. 17, 20

*Greatship (India) Limited v. Marine Logistics Solutions (Marsol),*
   2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) ........................................ 24

*Group Life & Health Ins. Co. v. Royal Drug Co.*,
   440 U.S. 205 (1979).............................................................................. 38

*Houlihan v. Offerman & Co., Inc.*,
   31 F.3d 692 (8th Cir. 1994) ................................................................... 7

*Huch v. Charter Communications, Inc.*,
   290 S.W.3d 721 (Mo. banc 2009)........................................................ 16

*Intern. Broth. of Elec. Workers v. Iowa Electric Light and Power Co.*,
   668 F.2d 413 (8th Cir. 1982) ............................................................... 27

*Intern. Broth. of Elec. Workers v. GKN Aerospace N. Am., Inc.*,
   431 F.3d 624 (8th Cir. 2005) ............................................................... 11

*Johnson v. Browne*,
   205 U.S. 309 (1907)............................................................................. 34

*Kidde America, Inc. v. Dir. of Revenue*,
   242 S.W.3d 709 (Mo. banc 2008)........................................................ 18

*Krombach v. Mayflower Ins. Co.*,
   827 S.W.2d 208 (Mo. banc 1992)........................................................ 25

*Kyte v. American Family Mut. Ins. Co.*,
   92 S.W.3d 295 (Mo.App. W.D. 2002)................................................. 20

*La. Safety Ass'n of Timbermen-Self Insurers Fund v. Certain Underwriters at
   Lloyd's, London*, 131 S.Ct. 65 (2010).................................................. 34

*Matter of Arbitration Between England Ship Owners Mut. Ins. Ass'n
   (Luxembourg) & Am. Marine Corp.*, 1992 WL 37700
   (E.D. La. Feb. 18, 1992) ..................................................................... 37

vi

Appellate Case: 12-3546     Page: 7     Date Filed: 01/08/2013 Entry ID: 3992061

*McCrary v. Stifel, Nicolaus & Company, Inc.,*
    687 F.3d 1052 (8th Cir. 2012) .................................................. 11

*Medellín v. Texas,*
    552 U.S. 491 (2008)......................................................... 32-34

*Mendenhall v. Property and Casualty Ins. Co. of Hartford,*
    375 S.W.3d 90 (Mo. banc 2012)............................................. 25

*Missouri Bank and Trust Company of Kansas City v. OneBeacon Insurance*
    *Company,* 688 F.3d 943 (8th Cir. 2012) .................................. 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985).............................................................. 12

*Moran v. Ceiling Fans Direct, Inc.,*
    239 Fed. Appx. 931 (5th Cir. 2007)........................................ 12

*Munroe v. Cont'l W. Ins. Co.,*
    837 F.Supp.2d 1045 (E.D. Mo. Dec. 5, 2011) ........................ 25

*NAACP v. Am. Family Mut. Ins. Co.,*
    978 F.2d 287 (7th Cir. 1992) ................................................. 37

*Newspaper Guild of St. Louis v. St. Louis Post Dispatch, LLC,*
    641 F.3d 263 (8th Cir. 2011) ................................................. 11

*Owner-Operator Independent Drivers Assoc., Inc. v. Supervalu, Inc.,*
    651 F.3d 857 (8th Cir. 2011) ................................................. 38

*Perkins v. Elg,* 307 U.S. 325 (1939) ............................................. 34

*Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211 (1995) ............................ 32-33

*Pioneer Nat. Res. U.S.A., Inc. v. Zurich Am. Ins. Co., et al.,*
    2009 WL 3415141 (M.D. La. Oct. 7, 2009) ........................... 27

*Raffington v. Cangemi,*
    399 F.3d 900 (8th Cir. 2005) ................................................. 35

Appellate Case: 12-3546     Page: 8     Date Filed: 01/08/2013 Entry ID: 3992061

*Riggins v. City of Kansas City,*
    351 S.W.3d 742 (Mo.App. W.D. 2011).................................................. 18

*Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London,*
    587 F.3d 714 (5th Cir. 2009) (en banc), *cert. denied sub nom.*
    *La. Safety Ass'n of Timbermen-Self Insurers Fund v. Certain*
    *Underwriters at Lloyd's, London*, 131 S.Ct. 65 (2010)...........28, 31, 35-36

*Saunders v. Farmers Ins. Exchange*,
    537 F.3d 961 (8th Cir. 2008) ................................................................. 37

*Scherk v. Alberto-Culver Co*.,
    417 U.S. 506 (1974)................................................................................ 33

*Standard Security Life Ins. Co. v. West*,
    267 F.3d 821 (8th Cir. 2001) ................................................ 14, 21, 29, 41

*State, on Inf. of McKittrick v. Koon,*
    201 S.W.2d 446 (Mo. banc 1947).......................................................... 13

*Stephens v. American International Ins. Co*.,
    66 F.3d 41 (2d Cir. 1995)...................................................................32-34

*Sturgeon v. Allied Prof'ls Ins. Co.*,
    344 S.W.3d 205 (Mo.App. E.D. 2011) ...................................14-15, 29-30

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, Syndicate*
    *Nos. 109, et al.*, No. 96-4386-CV-C-2
    (W.D. Mo. September 23, 1997) (unpublished opinion).......................... 39

*Transit Cas. Co. v. Compagnie Européene D'Assurances Industrelles, S.A.,*
    No. 97-4194-CV-C- 2 (W.D. Mo. Nov. 25, 1997) (unpublished opinion),
    *appeal dismissed*, No. 97-4190WM (8th Cir. April 7, 1998)................. 39

*Transit Cas. Co. v. Winterthur Swiss Ins. Co.*, No. 97-4220-CV-C-2
    (W.D. Mo. Nov. 25, 1997) (unpublished opinion),
    *appeal dismissed*, No. 97-4191WM (8th Cir. April 7, 1998)................. 39

Appellate Case: 12-3546    Page: 9    Date Filed: 01/08/2013 Entry ID: 3992061

*Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126 (W.D. Mo. June 10, 1996), *appeal dismissed*, 119 F.3d 619 (8th Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998) ....................................................39-41

*Transit Casualty Company in Receivership v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392 (Mo.App. W.D. 1998) ..........22-23

*Tri-County Retreading, Inc. v. Bandag Inc.,* 851 S.W.2d 780 (Mo.App. E.D. 1993) .................................................... 14

*Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc.,* 707 F. Supp. 277 (S.D. Tex. 1989) ........................................... 37

*United States Dept. of Treasury v. Fabe,* 508 U.S. 491 (1993)............................................................37-38

*United States ex rel. Perez v. Warden, FMC Rochester,* 286 F.3d 1059 (8th Cir.), *cert. denied,* 537 U.S. 869 (2002) .................. 35

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706 (8th Cir. 2001) ................................................. 24

*White v. Illinois Founders Ins. Co.,* 52 S.W.3d 597 (Mo.App. E.D. 2001) ...................................................... 7

## Statutes

9 U.S.C. §16 ........................................................................... 1

9 U.S.C. §201-208 ..............................................................26, 33-34

15 U.S.C. §1011 *et seq.*..........................................................28-29

15 U.S.C. §1012(b) .......................................................... 29, 38, 40

28 U.S.C. §1291 ...................................................................... 1

28 U.S.C. §1331 ...................................................................... 1

Appellate Case: 12-3546   Page: 10   Date Filed: 01/08/2013 Entry ID: 3992061

28 U.S.C. §1332 ................................................................. 1

Pub. L. No. 91-368, 84 Stat. 692 ....................................... 26

§375.158 RSMo .............................................................. 16

§375.256 RSMo .............................................................. 23

§384.068.1 RSMo ........................................................... 23

§435.350 RSMo .................................... 10, 13-16, 28-29, 34, 38-42

§506.500 RSMo .............................................................. 23

**Treaties**

21 U.S.T. 2517, T.I.A.S. No. 6997 ................................... 26

**Other Authorities**

H.R. Rep. 91-1181 (6/11/70) ........................................... 27

20 CSR 500-1.600 (June 30, 2003 ed.) ........................... 15-16

30 Mo.Prac., *Insurance Law & Practice* §1.8 (2d ed.) ............... 17

30 Mo.Prac., *Insurance Law & Practice* §5.3 (2d ed.) .............. 15

2 *Couch on Insurance* §21:22 (3d ed.) ............................ 17

Domke, *The United States Implementation of the United Nations Arbitral Convention,* 19 AM.J.COMP.L. 575 (1971) .......... 27, 33

Bozarth, *The Uniform Arbitration Act in Missouri,* 46 MO.L.REV. 627 (1981) ........................................ 24

Maleda & Flitner, COMMERCIAL GENERAL LIABILITY 109 (3d ed. 1990) .... 17

Appellate Case: 12-3546    Page: 11    Date Filed: 01/08/2013 Entry ID: 3992061

# JURISDICTIONAL STATEMENT

AEGIS in its Jurisdictional Statement relies primarily on federal question jurisdiction under 28 U.S.C. §1331 as the basis for subject matter jurisdiction in this case. However, in its Notice of Removal and Civil Cover Sheet, Appx-8-9, 157, the primary basis for jurisdiction relied on by AEGIS was diversity jurisdiction pursuant to 28 U.S.C. §1332. UEC agrees that there is diversity jurisdiction and that this Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and 9 U.S.C. §16.

## <u>STATEMENT OF THE ISSUES</u>

A. Whether the district court properly denied AEGIS's motion to compel arbitration based upon the finding that there was no agreement to arbitrate in the AEGIS policy, given the policy endorsement providing that disputes would be governed by Missouri law which prohibits mandatory arbitration of insurance disputes?

*Standard Security Life Ins. Co. of New York v. West,* 267 F.3d 821 (8th Cir. 2001)

*Sturgeon v. Allied Professionals Ins. Co.,* 344 S.W.3d 205 (Mo.App. E.D. 2011)

*Grable v. Atlantic Cas. Ins. Co.,* 280 S.W.3d 104 (Mo.App. E.D. 2009)

*Kidde America, Inc. v. Dir. of Revenue,* 242 S.W.3d 709 (Mo. banc 2008)

B. Whether AEGIS's motion to compel arbitration would have been properly denied even if the AEGIS policy had contained a mandatory arbitration clause because the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as implemented by the Convention Act, is preempted under the McCarran-Ferguson Act by Missouri statutes and regulations prohibiting mandatory arbitration of insurance disputes?

*Stephens v. American International Ins. Co.,* 66 F.3d 41 (2d Cir. 1995)

*Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London,* 1996 WL 938126 (W.D. Mo. 1996), *aff'd,* 119 F.3d 619 (8th Cir. 1997)

*Medellín v. Texas,* 552 U.S. 491 (2008)

*Cherichel v. Holder,* 591 F.3d 1002 (8th Cir. 2010)

2

## STATEMENT OF THE FACTS

UEC, a Missouri public utility, owns and operates the Taum Sauk hydroelectric power plant located in Reynolds County, Missouri.  Appendix (hereinafter "Appx") 164, 166.  When operational, Taum Sauk generates electrical power by releasing water from a reservoir located on top of Proffit Mountain. Appx-167.  That water flows down a channel into turbines at the base of the mountain to generate electrical power.  Appx-167.  The water is later pumped from a lower reservoir back to the upper reservoir, where it is stored until needed. Appx-167.

Early in the morning of December 14, 2005, the northwest corner of the upper reservoir failed, releasing more than one billion gallons of water down the northwest side of Proffit Mountain ("Taum Sauk breach").  Appx-167.  The flow of water cut a scour of vegetation and soil down to bedrock on the side of the mountain, passed through the Johnson's Shut-Ins State Park (the "Park") and flowed into the East Fork of the Black River.  Appx-167.  The Taum Sauk breach devastated the Park, destroyed the home of the Park Superintendent and flooded parts of Highway N.  Appx-167.  Trees were caught in the torrent and piled fifteen feet high in some parts of the Park.  Sand and clay up to eight feet deep covered much of the area.  The flow of water deposited tons of sediment into the lower reservoir.  Appx-167.  It also scoured a hole at the base of Proffit Mountain and

3

displaced boulders that dammed the East Fork of the Black River, creating a six-acre lake. Appx-167. UEC has incurred over $100 million in expense solely for remediation and restoration of the Park. Appx-172.

On December 13, 2006, the Attorney General of the State of Missouri filed suit against UEC seeking to recover actual and punitive damages related to the Taum Sauk breach. Appx-171. UEC engaged in settlement discussions with the Attorney General, the Missouri Department of Natural Resources and the Missouri Conservation Commission. After nearly two years of intensive negotiations, the State's claims were settled for monetary and in-kind payments by UEC totaling approximately $177 million, including the remediation and restoration of the Park. Appx-172. The terms of the settlement were incorporated into a Consent Judgment entered and overseen by the Reynolds County Circuit Court. Appx-173. In addition to the State's claims, other property and business owners made claims against UEC for damage caused by the Taum Sauk breach. Appx-173. Most of these claims have been resolved. Appx-173.

UEC, through its broker, notified AEGIS, UEC's third level excess liability insurer, of the Taum Sauk breach on the day it occurred. Appx-168. AEGIS had issued a liability policy to Ameren Corporation, with Ameren's subsidiary UEC as a named insured, for the period September 1, 2005 through September 1, 2006

4

("AEGIS policy"). The AEGIS policy provides $25 million of coverage in excess of $136 million in underlying layers. Appx-168.

Although AEGIS was notified immediately of the Taum Sauk breach and kept fully advised of UEC's efforts to resolve all of the claims associated with the breach, AEGIS has refused to reimburse UEC for any costs incurred with respect to these claims. Appx-172, 174. AEGIS has provided no valid justification for its refusal to indemnify UEC up to its policy limits. Appx-176-77. It has stated only that the damages paid were "excessive." Appx-176-77. UEC alleges that AEGIS's refusal has been vexatious, as evidenced by the insurer's citation of insurance coverage doctrines that are inapplicable to third-party liability insurance and its reliance on a grossly inadequate and self-serving damage analysis prepared six months *after* the Consent Judgment was entered. Appx-176-77. AEGIS's refusal to pay its limits has also impaired UEC's ability to seek recovery from an excess insurer providing coverage above AEGIS's layer that claims its policies are triggered only by exhaustion of all underlying policy limits. Appx-165.

Because of AEGIS's continued refusal over a period of years to pay UEC's claim, UEC filed suit against AEGIS on April 6, 2012 in the Circuit Court for the City of St. Louis, Missouri. Appx-19. AEGIS removed the case to the United States District Court for the Eastern District of Missouri, Appx-7, and then filed a motion to compel arbitration. Appx-179.

Appellate Case: 12-3546    Page: 16    Date Filed: 01/08/2013 Entry ID: 3992061

In support of its argument that there is a valid mandatory agreement to arbitrate, AEGIS relies on Section IV(M) of the form policy. That section, also referred to as Condition (M), is entitled "Dispute Resolution and Service of Suit." Addendum to AEGIS Brief (hereinafter "Add") 6. It states that "[a]ny controversy or dispute arising out of or relating to this" policy "shall be resolved in accordance with the procedures specified in this Condition (M)." Add-6. According to Condition (M), if disputes are not resolved by nonbinding means, "[a]ny controversy or dispute . . . shall be settled by binding arbitration." Add-6. Condition (M) includes a statement that AEGIS will submit to a court "[i]n the event of a judgment being entered against [AEGIS] on an arbitration award," but provides that this service-of-suit clause "is solely intended as an aid to compelling or enforcing such arbitration, not as an alternative to the arbitration requirements . . . ." Add-7.

However, the AEGIS policy includes an endorsement that conflicts with Condition (M). Endorsement Two is entitled "Policy Disputes" and states that "[n]otwithstanding anything contained in this Policy to the contrary, any dispute relating to this Insurance or to a CLAIM . . . shall be governed by and construed in accordance with the laws of the state of Missouri." Add-9. The endorsement provides in addition that "each party agree[s] to submit to the jurisdiction of the Courts of the state of Missouri." Add-9. Endorsement Two does not provide for

6

arbitration and places no limitation on the parties' agreement to submit to the jurisdiction of the Missouri courts.

The district court (Hamilton, J.) issued an order dated August 23, 2012 denying AEGIS's motion to compel arbitration. Add-1-5. The district court recognized that its first inquiry in ruling on the motion was "'to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement.' *Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 694-95 (8th Cir. 1994)." Add-3. Applying Missouri law, the district court considered well-settled rules of insurance policy construction, noting specifically that "'[i]t is well established that if the language of an endorsement conflicts with language found in the general provisions of an insurance policy, the language found in the endorsement will prevail.' *White v. Illinois Founders Ins. Co.,* 52 S.W.3d 597, 598 (Mo. Ct. App. 2001)." Add-4.

The district court found that "the plain language of the Policy suggests the parties did not intend to submit disputes related to the Policy to arbitration." Add-4. The court rejected AEGIS's argument that Endorsement Two did not conflict with the form policy's arbitration provisions, stating that "Defendant's argument ignores that Endorsement Two provides that the parties 'agree to submit to the jurisdiction of the Courts of the state of Missouri.'" Add-5. According to the district court:

7

> Endorsement Two explicitly states that the parties agree to resolve disputes involving the Policy in Missouri courts. Therefore, Endorsement Two is in direct conflict with the arbitration provision in Section IV([M])(3), and the language in Endorsement Two controls the interpretation of the Policy.

Add-5. Finally, the district court noted that, even if Endorsement Two did not clearly require both parties to submit policy disputes to the Missouri courts, the inclusion of Endorsement Two renders the policy "ambiguous at best." Add-5. "Since the Court must resolve all ambiguities in favor of the insured, . . . the Policy would still permit Plaintiff to pursue its claims in its chosen forum." Add-5.

Following this Order, AEGIS moved to stay the underlying litigation pending appeal. Appx-243, 246. The district court granted the stay on October 17, 2012. Appx-285.

## SUMMARY OF ARGUMENT

The district court properly found that the first step in ruling on a motion to compel arbitration is determining whether the parties have in fact entered into an agreement to arbitrate, and that the AEGIS policy contains no such agreement. AEGIS does not dispute that Missouri law governs whether the AEGIS policy contains a mandatory arbitration provision. However, AEGIS asks this Court, in contravention of Missouri law, to ignore as surplusage the key provision in the insurance policy related to dispute resolution.

While the AEGIS form policy contains an arbitration provision, that provision was superseded by Endorsement Two. The endorsement provides:

### ENDORSEMENT NUMBER:  TWO

### POLICY DISPUTES

Notwithstanding anything contained in this Policy to the contrary, any dispute relating to this Insurance or to a CLAIM (including but not limited thereto the interpretation of any provision of the Insurance) shall be governed by and construed in accordance with the laws of the State of Missouri and each party agree[s] to submit to the jurisdiction of the Courts of the state of Missouri.

As AEGIS acknowledges in its Brief at 31, "Missouri courts have held that arbitration agreements in insurance contracts are unenforceable." Therefore, Endorsement Two, through its express application of Missouri law to disputes under the policy, means that the parties have **not agreed** to submit disputes arising

9

under the AEGIS policy to mandatory arbitration. In the absence of any such agreement, the district court properly denied the motion to compel arbitration.

Because there is no agreement to arbitrate, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") is inapplicable. That treaty only applies if parties have agreed to submit their disputes to mandatory arbitration. By virtue of Endorsement Two, they have agreed not to do so here. Moreover, even if there had been a mandatory arbitration requirement under the AEGIS policy, the better reasoned precedents, including those from this Circuit, conclude that the Convention does not supplant state laws related to the regulation of insurance. Since the Missouri statute invalidating mandatory arbitration of insurance disputes, §435.350 RSMo, is a law related to the regulation of insurance, it would bar enforcement of mandatory arbitration in this case even if the parties had not agreed to Endorsement Two.

Appellate Case: 12-3546    Page: 21    Date Filed: 01/08/2013 Entry ID: 3992061

## ARGUMENT

## Standard of Review

The interpretation of a contract, including whether it is ambiguous as written, is a question of law that this Court reviews *de novo*. *Missouri Bank and Trust Company of Kansas City v. OneBeacon Insurance Company,* 688 F.3d 943, 947 (8th Cir. 2012). More specifically, this Court has declared,"'Where, as here, an arbitration provision of a contract is at issue, we also review de novo the court's interpretation of the contract and the arbitration clause.'" *Newspaper Guild of St. Louis v. St. Louis Post Dispatch, LLC,* 641 F.3d 263, 266 (8th Cir. 2011) (reversing district court order compelling arbitration), *quoting Intern. Broth. of Elec. Workers v. GKN Aerospace N. Am., Inc.,* 431 F.3d 624, 627 (8th Cir. 2005). The Court may affirm the district court "on any basis that is supported by the record." *McCrary v. Stifel, Nicolaus & Company, Inc.,* 687 F.3d 1052, 1058 (8th Cir. 2012) (internal citation omitted).

## A. The AEGIS Policy Does Not Require Mandatory Arbitration

### 1. Missouri Law Principles of Contract Interpretation Govern

"'The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'" *Berthel Fisher & Company Financial Services, Inc. v. Larmon,* 695 F.3d 749, 751-52 (8th Cir. 2012) (affirming denial of investors' motion to compel arbitration against securities

11

broker-dealer where investors were not "customers" subject to the arbitration requirements of the FINRA code), *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). Whether the AEGIS policy contains a valid arbitration agreement is governed by "[o]rdinary state law contract principles." *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins.,* 242 F.3d 777, 780 (8th Cir. 2001) (internal citation omitted) (affirming denial of motion to stay litigation in favor of arbitration where contract was ambiguous under North Dakota law as to whether it incorporated arbitration provision); *see also Moran v. Ceiling Fans Direct, Inc.,* 239 Fed. Appx. 931, 936 (5th Cir. 2007) (despite federal policy favoring arbitration, the question of whether the parties agreed to arbitrate a dispute is governed by state contract law). Here, the AEGIS policy provides that Missouri law governs the policy and any disputes related to it. Add-8-9. Thus, as AEGIS concedes, *see* AEGIS Brief at 15, 20, this Court must look to Missouri law to determine if a valid agreement to arbitrate exists.

### 2. Mandatory Arbitration Provisions in Insurance Policies Are Void and Unenforceable Under Missouri Law

AEGIS argues that Section IV(M) of the form policy requires mandatory arbitration of this dispute. That section, also referred to as Condition (M), states that "[a]ny controversy or dispute arising out of or relating to this" policy "shall be resolved in accordance with the procedures specified in this Condition (M)." Add-6. Condition (M) specifies that if disputes are not resolved by nonbinding means,

12

"[a]ny controversy or dispute . . . shall be settled by binding arbitration."  Add-6.

However, the AEGIS policy also includes Endorsement Two, entitled "Policy Disputes."  This endorsement states that "[n]otwithstanding anything contained in this Policy to the contrary, **any dispute** relating to this Insurance or to a CLAIM . . . **shall be governed by** and construed in accordance with **the laws of the state of Missouri**."  Add-9 (emphasis added).  An insurance dispute governed by Missouri law cannot be subject to mandatory arbitration.  "In Missouri, the insurance business is affected with a public interest and is subject to the control and regulations of the state's police power."  *State, on Inf. of McKittrick v. Koon*, 201 S.W.2d 446, 452 (Mo. banc 1947).  The State of Missouri has exercised this power, by statute and regulation, to preclude mandatory arbitration as a dispute resolution mechanism in insurance policies.

Section 435.350 of the Missouri Uniform Arbitration Act renders the arbitration clause in Condition (M) invalid and unenforceable.  That statute provides, in pertinent part:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract, ***except contracts of insurance*** and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

§435.350 RSMo (emphasis added).  This Court and Missouri courts have uniformly construed §435.350 to provide that mandatory arbitration clauses in

13

insurance policies are unenforceable. In *Standard Security Life Ins. Co. v. West*, 267 F.3d 821, 823-24 (8th Cir. 2001), this Court affirmed the dismissal of an insurer's action to compel a Missouri insured to arbitrate under the Federal Arbitration Act ("FAA") because insurance policy arbitration provisions are invalid under §435.350 RSMo. As the Court explained:

> [S]ection 435.350 regulates an integral part of the insurer-insured relationship by invalidating an otherwise mandatory insurance contract term that allows either party to compel arbitration of policy disputes, thus subjecting all policy disputes to the possibility of a jury trial.

*Id.* at 824.

The Missouri Court of Appeals in the recent case of *Sturgeon v. Allied Prof'ls Ins. Co.*, 344 S.W.3d 205, 210 (Mo.App. E.D. 2011), agreed with *Standard Security* and emphasized that §435.350 reflects the Missouri legislature's expression of public policy. In *Sturgeon,* the question was whether to enforce a California choice of law provision in an insurance contract that would have likely required arbitration. As the court of appeals observed:

> We recognize that generally parties may choose the state whose law will govern the interpretation of their contractual rights and duties. *Tri-County Retreading, Inc. v. Bandag Inc.,* 851 S.W.2d 780, 784 (Mo.App. E.D. 1993). As long as the application of this law is not contrary to a fundamental policy of Missouri, we will honor the parties' choice of law provision. *Id.* Here, the application of California law would allow the arbitration clause in an insurance policy to be enforced. Such a result would be contrary to Missouri public policy, because Section 435.350 of the Missouri Arbitration Act prohibits mandatory arbitration provisions in insurance contracts.

*Id.* This prohibition of mandatory arbitration in the insurance context is "for the protection of the insured." *Id.* at 217. As a consequence, the *Sturgeon* court rejected the application of California law:

> Accordingly, we conclude that applying California law to Respondent's claim would be against Missouri public policy, because it would allow the enforcement of an arbitration clause in an insurance contract. Therefore, the California choice of law provision in Respondent's insurance policy is void and unenforceable. Missouri law applies to this case.

*Id.* at 210. In sum, both this Court and the state courts of Missouri have recognized that "Missouri has decided, as have other states, that mandatory arbitration clauses in *any* insurance contract are void and against public policy." *Id.* at 217 (emphasis in original).[1]

Mandatory arbitration clauses in Missouri insurance policies are also invalid under a state regulation promulgated by the Missouri Department of Insurance:

> **PURPOSE:** **This regulation precludes insurers from issuing property and casualty insurance policies containing compulsory arbitration provisions . . . .**
>
> (1)  Any contract or agreement entered into containing any clause or provision providing for an adjustment by arbitration ***shall not preclude any party or beneficiary under the contract or agreement from instituting suit or legal action on the contract at any time*** and the compliance with the clause or provision

---

[1]  *See also* 30 Mo. Prac., *Insurance Law & Practice* §5:3 (2d ed.) (citing *Sturgeon* for the proposition that "under V.A.M.S. §435.350, it is contrary to the public policy of Missouri to enforce a mandatory arbitration provision in an insurance policy.").

15

shall not be a condition precedent to the right to bring or recover in the action. ***A party is bound by an arbitration provision only when s/he elects to arbitrate and a lawful and binding arbitration follows***.

20 CSR 500-1.600 (June 30, 2003 ed.) (emphasis added). This regulation dates back to 1974. *Id.* Because AEGIS engages in the business of insurance in Missouri, it must comply with all of the provisions of Missouri law that govern the insurance business. §375.158 RSMo. Like §435.350, the Department of Insurance regulation expressly prohibits insurers such as AEGIS from issuing insurance policies to Missouri insureds containing mandatory arbitration provisions. Properly adopted and promulgated regulations in Missouri "have independent power as law." *E.g., Huch v. Charter Communications, Inc.,* 290 S.W.3d 721, 725 (Mo. banc 2009) (internal citation omitted).

Under the above authorities, a Missouri insured cannot be required to arbitrate an insurance dispute but may elect to do so. Here, UEC has chosen not to arbitrate.

### 3. An Endorsement Takes Precedence Over the Form Conditions of the Policy

Endorsement Two of the AEGIS policy states that "any dispute" related to the AEGIS policy "shall be governed by . . . the laws of the State of Missouri." As §435.350 and 20 CSR 500-1.600 make clear, an insurance dispute governed by Missouri law cannot be subject to mandatory arbitration. Endorsements are used

16

"to amend the form policy 'to suit the needs of the insured or the insurer or to satisfy particular state requirements.'" *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 108 (Mo.App. E.D. 2009), *quoting* Maleda & Flitner, COMMERCIAL GENERAL LIABILITY 109 (3d ed. 1990). When an endorsement is part of an insurance contract, "[t]he terms and conditions of the policy are modified and altered to the extent called for by the endorsement." *Grable,* 280 S.W.3d at 108.

The obvious purpose of Endorsement Two was to conform the AEGIS policy to Missouri law, and in particular to the Department of Insurance regulation prohibiting casualty insurers from including compulsory arbitration provisions in their policies. It was the classic use of an endorsement "to satisfy particular state requirements." *Grable,* 280 S.W.3d at 108.

If there is a conflict between the language of the endorsement and the general provisions of the policy, "'the endorsement will prevail.'" *Grable,* 280 S.W.3d at 108, *quoting Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo. banc 1977); *see also* 2 *Couch on Insurance* §21:22 (3d ed.) (when endorsement modifies, qualifies, or restricts terms of original policy, endorsement controls); 30 Mo. Prac., *Insurance Law & Practice* §1.8 (2d ed.) (same). The arbitration provisions of the AEGIS form policy conflict with the endorsement requirement that "any dispute" be governed by Missouri law. Endorsement Two necessarily takes precedence over and supplants the dispute resolution procedures

17

in Condition (M) and renders those provisions unenforceable.

That conclusion is reinforced by the language in Endorsement Two that its provisions apply "[n]otwithstanding anything contained in this Policy to the contrary." Add-9. AEGIS contends that the endorsement would need to expressly state that it "replaces or supersedes" Condition (M) in order to be given priority. AEGIS Brief at 14. Although there is no such requirement – as evidenced by AEGIS's failure to cite any supporting authority – the "notwithstanding" clause is the functional equivalent of that language. Missouri courts hold that a "notwithstanding" clause requires enforcement of the provision that is the subject of the "notwithstanding" clause to the exclusion of any conflicting provision. *See Kidde America, Inc. v. Dir. of Revenue*, 242 S.W.3d 709, 712 (Mo. banc 2008) (a "notwithstanding any other provision of law" clause eliminates conflict because it overrides all provisions that would otherwise be applicable); *Riggins v. City of Kansas City,* 351 S.W.3d 742, 748-49 (Mo.App. W.D. 2011) (contract clause providing right to seek or grant extensions of time for excusable delays "notwithstanding any provisions of this Contract . . . to the contrary" allows extensions despite inconsistent provision for automatic termination in the event of delays). Here, the "notwithstanding" clause in Endorsement Two further compels this Court to hold that the endorsement's dispute resolution procedures – conformance to Missouri law and submission to the jurisdiction of the Missouri

18

courts – take precedence over any contradictory dispute resolution procedures, such as the arbitration clause in Condition (M).

**4. AEGIS's Attempts to Resolve the Conflict Between Endorsement Two and Condition (M) Are Inconsistent and Unavailing**

AEGIS tries to articulate a plausible alternative explanation for the inclusion of Endorsement Two in the policy in an effort to show that Condition (M) and Endorsement Two "are entirely consistent and supplement each other." AEGIS Brief at 10. After ignoring Endorsement Two altogether in its motion to compel arbitration, Appx-179-211, AEGIS first posited in its reply to UEC's opposition that the purpose of the endorsement was to specify where the arbitration should take place and what law should govern the arbitration. Appx-215. The problem with that explanation is that Endorsement Two does not refer to arbitration, let alone where it should occur, and, as AEGIS concedes, the form policy already specified Missouri choice of law.

It was not until after the district court denied the motion to compel arbitration and AEGIS sought a stay of the case pending appeal that AEGIS first described Endorsement Two as a "consent-to-jurisdiction" clause, a contention it expands upon in its brief in this Court.[2] This new explanation ignores the wording

_____

[2] To the extent AEGIS now attempts to argue interpretations of Endorsement Two that were not presented to the district court in support of AEGIS's motion to compel arbitration, those interpretations should not be considered by this Court. *DeAtley v. Mutual of Omaha Ins. Co.*, 2012 WL

19

of the endorsement and makes it totally superfluous – in violation of AEGIS's oft-cited precept that courts must read contracts "to give effect to all provisions and 'avoid leaving some provisions without function or sense.'"  AEGIS Brief at 20, *quoting Kyte v. American Family Mut. Ins. Co*., 92 S.W.3d 295, 299 (Mo.App. W.D. 2002).  It is particularly important to give meaning to an endorsement, since the very purpose of an endorsement is to amend the form policy.  *See Grable,* 280 S.W.3d at 108.

AEGIS's new explanation of the endorsement is that the clause "any dispute . . . shall be governed by and construed in accordance with the laws of the state of Missouri" merely "instructs the arbitration panel that the substantive laws of Missouri should be used to determine policy disputes or the construction of the Contract."  AEGIS Brief at 15.  However, this construction is an attempt to rewrite the clause and render it meaningless.  The clause does not refer to arbitration.  Moreover, it states that "any **dispute**" shall be governed by Missouri law.  That law clearly and unequivocally bars mandatory arbitration of insurance disputes and precludes insurers from including mandatory arbitration provisions in their policies.  Finally, as AEGIS concedes, the form policy already included a Missouri

---

5476219, *2 (8th Cir. Nov. 13, 2012) (insurance policy construction argument was not articulated below and insured "is thus precluded from raising it on appeal," noting that ordinarily, court will not consider arguments raised for the first time on appeal).

choice of law provision. Why would the parties to the insurance contract include an endorsement that was wholly redundant to a provision in the form policy?

AEGIS's interpretation of the balance of the endorsement suffers from the same defects. The endorsement continues, "and each party agree[s] to submit to the jurisdiction of the Courts of the state of Missouri." The word "and" means that this phrase must be read in conjunction with the agreement that "any dispute . . . shall be governed by and construed in accordance with the laws of the state of Missouri." AEGIS asserts that the endorsement does not say that this jurisdictional provision is for the purpose of resolving policy disputes. But the endorsement is entitled "Policy Disputes" and specifies that those disputes are to be governed by and construed in accordance with Missouri law. As this Court recognized in *Standard Security*, Missouri law invalidates mandatory arbitration provisions in order to "subject[] all policy disputes to the possibility of a jury trial." 267 F.3d at 824. The obvious purpose of this jurisdictional phrase in Endorsement Two is, as the district court found, to manifest the parties' agreement to submit to the Missouri courts – and therefore "the possibility of a jury trial" – for resolution of policy disputes.

AEGIS's argument that this "consent-to-jurisdiction" clause in Endorsement Two is fully consistent with the form policy is also belied by the plain wording of the insurance contract. The jurisdictional provision in Condition (M) is expressly

21

limited to an agreement by AEGIS to submit to a court "[i]n the event of a judgment being entered against [AEGIS] on an arbitration award," and provides that the service-of-suit clause "is solely intended as an aid to compelling or enforcing such arbitration, not as an alternative to the Arbitration requirements . . . ." Appx-139. There are no such limitations on the consent to jurisdiction found in Endorsement Two. The jurisdictional phrase in Endorsement Two would be wholly redundant to the jurisdictional provisions of Condition (M) if it were limited to enforcing arbitration rights.

As the Missouri Court of Appeals noted in rejecting a similar argument by a London reinsurer in *Transit Casualty Company in Receivership v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392, 397-98 (Mo.App. W.D. 1998):

> The language of the service of suit clause cannot, as the Reinsurers here assert, pertain only to the enforcement of an arbitration award. The plain language of the clause does not mention or otherwise refer to the word "arbitration," nor does it refer to [the policy provision] governing arbitration.
>
> . . . .
>
> The Reinsurers could have written the clause in these reinsurance agreements to expressly state that Art. XVII, the service of suit clause, only applies to suits to enforce arbitration awards, or otherwise, as it here argues. . . . The Reinsurers are in no position to complain at this point about the fact that they failed to draft the language as they would now like for this court to interpret it.

22

Here, as well, the language of Endorsement Two "is plain and clear," *id.* at 397; is not limited to enforcement of arbitration awards; and provides for litigation of "Policy Disputes" under Missouri law and in the Missouri courts.

The jurisdictional provision in Endorsement Two also cannot be read as simply providing for personal jurisdiction over AEGIS and UEC. AEGIS Brief at 15-18. An insurer issuing a policy in Missouri is already subject to personal jurisdiction under applicable insurance statutes and the Missouri long-arm statute. *See, e.g.,* §384.068.1 RSMo (permitting suit to be filed against an insurer upon any cause of action arising in Missouri); §375.256 RSMo (specifying that service upon the director of the Missouri Insurance Department is sufficient to effect service upon insurer); §506.500 RSMo (providing that firm submits to personal jurisdiction of Missouri courts by contracting to insure any person, property or risk located within the state). The implausibility of AEGIS's interpretation is further confirmed by its hollow assertion that without Endorsement Two, it might otherwise have difficulty obtaining personal jurisdiction in a Missouri court over UEC, a Missouri corporation and public utility with its principal place of business in St. Louis. AEGIS Brief at 16. Therefore, AEGIS's argument that the principal purpose of Endorsement Two is to ensure personal jurisdiction over the parties in the Missouri courts does not make sense.

Appellate Case: 12-3546    Page: 34    Date Filed: 01/08/2013 Entry ID: 3992061

AEGIS relies on *Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic,* 582 F.3d 393, 398 (2d Cir. 2009) and *Greatship (India) Limited v. Marine Logistics Solutions (Marsol),* 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012), AEGIS Brief at 17, for the proposition that such consent is necessary because the Convention does not itself confer personal jurisdiction over a party to an award. These cases are inapposite because they did not involve insurance disputes where, as here, there already exist independent statutory provisions creating personal jurisdiction over the insurer. The clear intent of Endorsement Two was to supersede arbitration as the mandatory means for resolution of policy disputes; it was not to create personal jurisdiction that already existed as a matter of law.

AEGIS is presumed to have understood the legal significance of agreeing in Endorsement Two that "any dispute" would be governed by Missouri law. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 713 (8th Cir. 2001) ("[I]t is presumed that the parties had the well settled law of the land in contemplation when the contract was made") (citation omitted). Arbitration clauses in insurance contracts have been void in Missouri for more than thirty years. *See* Bozarth, *The Uniform Arbitration Act in Missouri,* 46 MO. L. REV. 627, 635 (1981). AEGIS cannot make the contractual promises embodied in Endorsement Two to satisfy Missouri regulators and to Missouri law and then seek

24

to avoid those promises when confronted with a policyholder dispute.

### 5. Any Ambiguity Must Be Construed In Favor of The Insured, UEC

Endorsement Two clearly governs and voids any mandatory arbitration requirement.  However, as the district court recognized, even if there were an ambiguity about whether Condition (M)'s arbitration provisions survive Endorsement Two, it is well-established under Missouri law that ambiguities in insurance policies are construed in favor of the insured.  *E.g., American Home Assurance Co. v. Pope,* 591 F.3d 992, 998-99 (8th Cir. 2010) (reversing summary judgment for insurer where policy exclusion for "knowingly wrongful" acts was ambiguous); *Munroe v. Cont'l W. Ins. Co.,* 837 F.Supp.2d 1045, 1049 (E.D. Mo. Dec. 5, 2011) (endorsement created ambiguity which must be construed in favor of insured).  As this Court has observed, ambiguities are construed in favor of the insured because:

> (1) "insurance is designed to furnish protection to the insured, not defeat it;" and  (2) "as the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract."

*American Home,* 591 F.3d at 999, *quoting Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210-11 (Mo. banc 1992); *see also Mendenhall v. Property and Casualty Ins. Co. of Hartford,* 375 S.W.3d 90, 92 (Mo. banc 2012) (reversing grant of summary judgment in favor of insurer where exclusion relied upon by insurer was ambiguous).

25

As the district court found below, even if Endorsement Two did not clearly override the arbitration provisions of Condition (M), at the very least Endorsement Two and Condition (M) would create an ambiguity about the appropriate form of dispute resolution under the policy. Any ambiguity created by Condition (M) and Endorsement Two would have to be resolved in favor of the insured, UEC, and, as the district court concluded, "still permit [UEC] to pursue its claims in its chosen forum." Add-5.

## B. Even If UEC and AEGIS Had Agreed to Mandatory Arbitration, the Missouri Uniform Arbitration Act Would Render the Arbitration Agreement Unenforceable

Because Endorsement Two establishes that the parties have not agreed to mandatory arbitration, the district court properly did not reach the issue of whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") would require enforcement of an arbitration clause in an insurance policy even if mandatory arbitration were against the public policy of the forum. The United States acceded to the Convention on September 30, 1970, and the Convention became effective in the United States on December 29, 1970. 21 U.S.T. 2517, T.I.A.S. No. 6997. Congress, on July 31, 1970, implemented the Convention by enacting Chapter 2 of the Federal Arbitration Act ("FAA"), Pub. L. No. 91-368, 84 Stat. 692, *codified at* 9 U.S.C. §§201-208 (the "Convention Act"). The passage of this implementing legislation prior to the Convention taking effect

26

in this country was expressly contemplated when the Senate approved the treaty in 1968.  M. Domke, *The United States Implementation of the United Nations Arbitral Convention,* 19 AM.J.COMP.L. 575, 575 & n.10 (1971).[3]

As with any action brought pursuant to the FAA, the Convention Act applies "only where the parties have agreed to mandatory arbitration."  *Conseco, Inc. v. National Union Fire Ins. Co.*, 2002 U.S. Dist. LEXIS 26554, at *15 (D. Ind. Jan. 15, 2002) (remanding to state court for lack of subject matter jurisdiction under the Convention because policy provided for optional, rather than mandatory, arbitration), *citing Intern. Broth. of Elec. Workers v. Iowa Electric Light and Power Co.*, 668 F.2d 413, 419 (8th Cir. 1982); *see Pioneer Nat. Res. U.S.A., Inc. v. Zurich Am. Ins. Co., et al.*, 2009 WL 3415141, at *6-*7 (M.D. La. Oct. 7, 2009) (denying motion to compel arbitration under Convention after finding no valid agreement to arbitrate in insurance policy that contained conflicting mandatory and permissive arbitration provisions).  By virtue of Endorsement Two, AEGIS and UEC have not agreed to submit disputes to mandatory arbitration.  Therefore, the Convention is irrelevant to this case.  This Court need not and should not reach the question whether the Convention would require a federal court to enforce a mandatory arbitration provision in an insurance agreement despite Missouri's

---

[3]  *See also* H.R. Rep. 91-1181 (6/11/70) (incorporating 1969 letter from State Department stating that accession to the Convention would be deferred until Congress enacted "the necessary implementing legislation").

Appellate Case: 12-3546     Page: 38     Date Filed: 01/08/2013 Entry ID: 3992061

public policy voiding such agreements.

The lack of an agreement to submit to mandatory arbitration distinguishes this case from the federal appellate cases relied on by AEGIS. In both *ESAB Group, Inc. v. Zurich Ins. PLC,* 685 F.3d 376 (4th Cir. 2012), and *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London,* 587 F.3d 714 (5th Cir. 2009) (en banc), *cert. denied sub nom. La. Safety Ass'n of Timbermen-Self Insurers Fund v. Certain Underwriters at Lloyd's, London*, 131 S.Ct. 65 (2010), there was a mandatory arbitration provision that had been agreed upon by the parties.

Since AEGIS has briefed the impact of the Convention where the parties have agreed to mandatory arbitration, UEC responds to its arguments below. The better reasoned authority outside this Circuit, as well as prior decisions within it, support the conclusion that, as a result of the McCarran-Ferguson Act, Missouri's prohibition of mandatory arbitration clauses in insurance contracts, §435.350 RSMo, is not preempted by the Convention as implemented by the Convention Act. Therefore, even if the AEGIS policy had contained a mandatory arbitration provision – which it does not – that provision would not be enforceable in Missouri.

1.    **By Virtue of the McCarran-Ferguson Act, the Federal Arbitration Act Does Not Preempt Section 435.350 RSMo**

The McCarran-Ferguson Act, 15 U.S.C. §1011 *et seq.,* declares that "the continued regulation and taxation by the several States of the business of insurance

28

is in the public interest." *Id.* at §1011. It states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." *Id*. at §1012(b). Thus, a state law enacted for the purpose of regulating the business of insurance cannot be preempted by an "Act of Congress" that does not specifically involve the business of insurance.

As AEGIS acknowledges, this Court has recognized that §435.350 RSMo regulates the business of insurance and therefore is not preempted by the FAA, which is a law of general applicability that does not specifically relate to the business of insurance. *Standard Security Life Ins. Co. v. West*, 267 F.3d 821, 824 (8th Cir. 2001). In *Standard Security*, this Court affirmed the district court's order dismissing an action by a disability insurer to compel its Missouri insured to arbitrate a coverage dispute. In so holding, the Court found that §435.350 was enacted for the purpose of regulating the business of insurance and therefore overrode the FAA.

Missouri state courts have likewise concluded that by virtue of the McCarran-Ferguson Act, §435.350 RSMo is not preempted by the FAA – most recently in *Sturgeon v. Allied Professionals Ins. Co.,* 344 S.W.3d 205 (Mo.App. E.D. 2011). Relying on *Standard Security*, the *Sturgeon* court held that the McCarran-Ferguson Act operates to bar the FAA's preemption of §435.350 and

29

affirmed the denial of a motion to compel arbitration of an insurance dispute involving a Missouri insured. The court concluded that a California choice of law provision in the insurance policy was void and unenforceable because California law would have allowed enforcement of the mandatory arbitration provision in the policy. The *Sturgeon* court also recognized that the prohibition on arbitration applies to *all* insurers doing business in the state: "Appellant cannot complain when it is being treated like every other insurance group in Missouri, *e.g.,* subject to Missouri's prohibition against arbitration clauses in insurance contracts." *Id.* at 216-17 (also stating that mandatory arbitration clauses in "any insurance contract" in Missouri are void and against public policy, and that this prohibition applies "to insurance companies across the board").

>
> **2.      The Better Reasoned Authorities, Including Those of This Circuit, Hold the McCarran-Ferguson Act Applicable to the Convention as Implemented By The Convention Act**

AEGIS argues, however, that Missouri's prohibition on mandatory arbitration of insurance contracts does not preclude mandatory arbitration here because AEGIS is a foreign insurer whose contractual arbitration provisions are enforceable under the Convention and not simply under the FAA. The logic of its position is that the Convention is an international treaty and not an "Act of Congress" and therefore the Convention is not subject to the McCarran-Ferguson Act.

Appellate Case: 12-3546      Page: 41      Date Filed: 01/08/2013 Entry ID: 3992061

The Convention, however, was implemented by the Convention Act, which is an Act of Congress. AEGIS attempts to overcome this fact by arguing that the Convention is a "self-executing" treaty and did not require implementation through the Convention Act. Alternatively, it claims that the McCarran-Ferguson Act concerns only domestic commerce and was never intended to apply to international treaties.

This Court has never directly addressed the question whether the Convention, as implemented by the Convention Act, is subject to the McCarran-Ferguson Act. Authorities outside this Circuit are split. In *Safety National Casualty Corp. v. Certain Underwriters at Lloyds, London*, 587 F.3d 714 (5th Cir. 2009) (en banc), a divided Fifth Circuit held that the commonly understood meaning of "Act of Congress" did not include a treaty, even if that treaty required implementing legislation. Therefore, the majority concluded that the Convention was not subject to the McCarran-Ferguson Act and, as a consequence, the Convention preempted a Louisiana statute that voided arbitration agreements in insurance contracts. The dissenters argued that the Convention was not self-executing and that the implementing statute, the Convention Act, was an "Act of Congress" within the meaning of McCarran-Ferguson. Therefore, the dissenters would have enforced the Louisiana prohibition on arbitration of insurance disputes despite the Convention.

31

A panel of the Fourth Circuit has more recently concluded that a South Carolina law invalidating arbitration clauses in insurance contracts was preempted by the Convention despite the McCarran-Ferguson Act. That court's logic was that the McCarran-Ferguson Act "is limited to legislation within the domestic realm." *ESAB Group, Inc. v. Zurich Insurance PLC*, 685 F.3d 376, 388 (4th Cir. 2012).

In contrast, the Second Circuit has held that a Kentucky anti-arbitration provision was not preempted by the Convention. *Stephens v. American International Ins. Co*., 66 F.3d 41 (2d Cir. 1995). It concluded that the Convention is not self-executing and therefore relies on an Act of Congress – the Convention Act – for its implementation. Because the McCarran-Ferguson Act preserves state statutes regulating the business of insurance from preemption by "Acts of Congress" not specifically related to insurance, the Second Circuit concluded that McCarran-Ferguson preserved the Kentucky statute from preemption by the Convention Act.

AEGIS disagrees with the Second Circuit and argues that the Convention is a self-executing treaty and therefore not subject to the McCarran-Ferguson Act. AEGIS Brief at 34. Were that true, however, there would have been no need for Congress to pass the Convention Act.[4] *See Medellín v. Texas*, 552 U.S. 491, 505

---

[4]  AEGIS effectively concedes this point by arguing that the Convention Act "supplements the Convention but is not necessary." AEGIS Brief at 37-38. An interpretation of a statute that would leave it "utterly without effect" is "a result to

32

(2008) (a self-executing treaty is one which "'operates of itself without the aid of any legislative provision'"), *quoting Foster v. Neilson*, 27 U.S. 253, 2 Pet. 253, 314 (1829) (Marshall, C.J.). That the Senate did not consider the treaty self-executing is evident from the fact that the Senate approved the Convention in October 1968 but delayed accession to the treaty until the passage of implementing legislation in 1970. *See* Domke, 19 AM.J.COMP.L. 575, 575 & n.10; *ESAB Group, Inc.,* 685 F.3d at 382. "A non-self-executing treaty, by definition, is one that was ratified with the understanding that it is not to have domestic effect of its own force." *Medellín*, *supra*, at 527. As even the Fourth Circuit acknowledged, "there is an emerging presumption against finding treaties to be self-executing." *ESAB Group, Inc.*, 685 F.3d at 387.

The Second Circuit is the only court to have directly addressed whether the Convention is self-executing and it concluded that the Convention is not. *Stephens,* 66 F.3d at 45. Its conclusion is consistent with the United States Supreme Court's observations about the Convention in *Medellín,* a case heavily relied on by AEGIS. In that case, the Supreme Court reiterated that non-self-executing treaties are not binding domestic law and "can only be enforced pursuant

---

be avoided if possible." *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 216 (1995). As the Supreme Court has stated, "Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. §201 *et seq.*, in order to **implement** the Convention." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (emphasis added).

33

to legislation to carry them into effect." *Id.* at 505 (internal citation omitted). It then cited the Convention Act as an example of a non-self-executing treaty. *Id.* at 521-22 (identifying the Convention Act as evidence that "Congress is up to the task of implementing non-self-executing treaties"). Thus, any rights AEGIS has pursuant to the Convention are afforded to it solely by the Convention's implementing legislation, the Convention Act, 9 U.S.C. § 201 *et seq.*, which is part of the FAA. Because the Convention Act is unquestionably an "Act of Congress" under the McCarran-Ferguson Act, the Convention cannot preempt §435.350 RSMo.[5]

  *Stephens* is consistent with decisions of this Court which emphasize that it is

---

[5] The only authority AEGIS cites for the proposition that the Convention is self-executing is an amicus brief filed by the Solicitor General in *Safety National* in response to a petition for writ of certiorari. *See* AEGIS Brief at 35-36. The Supreme Court denied the writ. *La. Safety Ass'n of Timbermen-Self Insurers Fund v. Certain Underwriters at Lloyd's, London,* 131 S.Ct. 65 (2010) (mem). Although the Solicitor General in that brief posited that the Convention is self-executing, his position conflicts with the Second Circuit's *Stephens* opinion and the Supreme Court's discussion of the Convention in *Medellín.* While AEGIS correctly states that the arguments of the executive branch are entitled to "great weight" in the interpretation of treaties, they are not dispositive. *See, e.g., Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 136 (1989) (Brennan, J., concurring) (acknowledging that majority had rejected interpretation of Warsaw Convention "that has consistently been adopted by the Executive Branch, and which is pressed on us in this case by the United States as *amicus curiae*"); *Perkins v. Elg,* 307 U.S. 325, 338 (1939) (rejecting Secretary of Labor's position that respondent was not a U.S. citizen by virtue of the Naturalization Convention and Protocol of 1869); *Johnson v. Browne,* 205 U.S. 309, 319-21 (1907) (rejecting Solicitor General's construction of the Ashburton Treaty of 1842 and Extradition Treaty of 1889).

34

a non-self-executing treaty's implementing legislation – and not the treaty itself – that has legal effect in United States courts. For example, in *Cherichel v. Holder*, 591 F.3d 1002 (8th Cir.), *cert. denied,* 131 S.Ct. 74 (2010), an alien tried to defer his deportation under the United Nations Convention Against Torture ("CAT"). In analyzing his claim, this Court stated:

> Although the CAT had been signed by the President and ratified by the Senate, it was not self-executing, "which means there is no direct right of action for violation of the treaty, only for violation of any domestic law implementing the treaty." . . .
>
> Congress implemented the CAT with the passage of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") . . . . [B]ecause there is no direct right of action for violation of the CAT, . . . [plaintiff's] claim is technically a FARRA claim.

*Cherichel,* 591 F.3d at 1006 & n.7, *quoting Raffington v. Cangemi*, 399 F.3d 900, 903 (8th Cir. 2005); *see also United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir.), *cert. denied,* 537 U.S. 869 (2002) (rejecting argument that federal prisoners had rights under International Covenant on Civil and Political Rights since it "does not bind federal courts because the treaty is not self-executing and Congress has yet to enact implementing legislation").

These prior decisions of this Court demonstrate that any rights AEGIS has pursuant to the Convention are solely by virtue of the Convention Act, which is part of the FAA and an "Act of Congress." The Fifth Circuit in *Safety National*

Appellate Case: 12-3546    Page: 46    Date Filed: 01/08/2013 Entry ID: 3992061

and the Fourth Circuit in *ESAB Group* tried to avoid this inevitable logic by imposing limitations on the McCarran-Ferguson Act that find no support in its language or history. The majority in *Safety National* held that even assuming the Convention was a non-self-executing treaty that required implementing legislation, Congress did not intend the phrase "Act of Congress" in the McCarran-Ferguson Act to include a treaty implemented by Congressional legislation. As the dissenters pointed out, this was "a doctrinal novelty of our circuit's own creation, as there is no precedent holding that a non-self-executing treaty, in and of itself, has the power to preempt state law." *Safety National*, 587 F.3d at 738 (Elrod, J. dissenting).

Similarly, the Fourth Circuit in *ESAB Group* declared that the McCarran-Ferguson Act related only to "domestic commerce" without any such limitation in the wording of the statute. The Fourth Circuit relied primarily on *American Insurance Assoc. v. Garamendi*, 539 U.S. 396 (2003), which addressed whether a California state law requiring disclosure of information about Holocaust-era insurance policies interfered with federal executive agreements regarding such policies. *See* 539 U.S. at 413. Significantly, *Garamendi* involved the alleged preemption of an executive agreement. The Supreme Court did not address whether, by virtue of the McCarran-Ferguson Act, state insurance regulations reverse preempt federal legislation implementing a non-self-executing treaty; nor

36

did the Supreme Court hold that the phrase "Act of Congress" in the McCarran-Ferguson Act is limited to "domestic commerce."[6]

This Court has rejected attempts to graft limitations on the McCarran-Ferguson Act, explicitly recognizing that the phrase "No Act of Congress" in the McCarran-Ferguson Act "'could not be more comprehensive.'" *Saunders v. Farmers Ins. Exchange*, 537 F.3d 961, 963 n.1 (8th Cir. 2008) (finding "Act of Congress" language encompassed "subsequently enacted federal civil rights legislation such as the Fair Housing Act."), *quoting NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 294 (7th Cir. 1992).

"'[T]he starting point in a case involving construction of the McCarran-Ferguson Act, like the starting point in any case involving the meaning of a statute, is the language of the statute itself.'" *United States Dep't. of Treasury v. Fabe*,

---

[6]   In addition to relying on *ESAB*, AEGIS cites two district court opinions. In *Matter of Arbitration Between England Ship Owners Mut. Ins. Ass'n (Luxembourg) & Am. Marine Corp.*, 1992 WL 37700 (E.D. La. Feb. 18, 1992), the district court concluded that the McCarran-Ferguson Act "was intended to apply only to interstate commerce, not to foreign commerce." *See* AEGIS Brief at 28. In doing so, it relied on the second district court opinion cited by AEGIS, *Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc.*, 707 F. Supp. 277, 278-79 (S.D. Tex. 1989). However, *Triton Lines* did not construe the McCarran-Ferguson Act as limited to interstate commerce. Rather, it held that the FAA preempted a Texas anti-arbitration statute because it believed the statute did not regulate the business of insurance. Even if *Am. Marine Corp.* rested on firmer grounds, its limiting construction of the McCarran-Ferguson Act, like the Fourth Circuit's construction in *ESAB*, is unsupported by the language of the Act and inconsistent with this Court's broad construction of it.

37

508 U.S. 491, 500 (1993), *quoting Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979). The McCarran-Ferguson Act unambiguously states – without limitation – that "**No Act of Congress** shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. §1012(b) (emphasis added); *see U.S. Dep't of Treasury v. Fabe*, 508 U.S. at 507 (§1012(b) of the McCarran-Ferguson Act imposes "what is, in effect, a clear-statement rule"). The Convention Act is indisputably an "Act of Congress." If the language of a statute is plain, the sole function of the courts is to enforce it according to its terms, and the courts "are not free to replace it with an unenacted legislative intent." *Owner-Operator Independent Drivers Assoc., Inc. v. Supervalu, Inc.*, 651 F.3d 857, 863 (8th Cir. 2011) (internal citations omitted). There is nothing in the language of the McCarran-Ferguson Act to suggest that Congress intended to limit the phrase "Act of Congress" to only certain statutes that "invalidate, impair or supersede" state regulation of the business of insurance. And the Fourth and Fifth Circuits' narrow reading of the McCarran-Ferguson Act is contrary to Eighth Circuit precedent. As a result, the Convention would not preempt §435.350 RSMo in this case even had there been an agreement in the AEGIS policy to submit disputes to mandatory arbitration.

Appellate Case: 12-3546    Page: 49    Date Filed: 01/08/2013 Entry ID: 3992061

This conclusion is further supported by the only cases within this Circuit that have directly addressed the issue. The United States District Court for the Western District of Missouri has expressly held that as a result of the McCarran-Ferguson Act, §435.350 RSMo is not preempted by the Convention. *Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126 (W.D. Mo. June 10, 1996), *appeal dismissed*, 119 F.3d 619 (8th Cir. 1997), *cert. denied,* 522 U.S. 1075 (1998). In *Transit Casualty*, London-based reinsurers removed an action from Missouri state court in order to compel arbitration pursuant to the Convention. The district court remanded the action because §435.350 RSMo barred the arbitration and was not preempted by the Convention or the FAA.[7]

AEGIS contends that although the district court in *Transit Casualty* "made mention of the Convention," it only addressed the McCarran-Ferguson Act versus the FAA and "never addressed whether the McCarran-Ferguson Act preempted the

---

[7] In the year after *Transit Casualty* was decided, the Western District of Missouri remanded three other cases that were removed to compel arbitration pursuant to an arbitration clause in a Lloyd's of London policy, ruling in each case that the Convention and Convention Act did not preempt §435.350 RSMo. *See Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, Syndicate Nos. 109, et al.*, No. 96-4386-CV-C-2 (W.D. Mo. September 23, 1997) (unpublished opinion); *Transit Cas. Co. v. Compagnie Européene D'Assurances Industrelles, S.A.,* No. 97-4194-CV-C- 2 (W.D. Mo. Nov. 25, 1997) (unpublished opinion), *appeal dismissed*, No. 97-4190WM (8th Cir. April 7, 1998); and *Transit Cas. Co. v. Winterthur Swiss Ins. Co.*, No. 97-4220-CV-C-2 (W.D. Mo. Nov. 25, 1997) (unpublished opinion), *appeal dismissed*, No. 97-4191WM (8th Cir. April 7, 1998).

Appellate Case: 12-3546     Page: 50     Date Filed: 01/08/2013 Entry ID: 3992061

Convention." AEGIS Brief at 33. AEGIS overlooks numerous references to the

Convention in *Transit Casualty*. Specifically, the district court stated:

> As a general rule, the arbitration clauses contained in the reinsurance
> agreements at issue would be enforceable under ***the Convention*** and
> the Federal Arbitration Act and would preempt Missouri statutes
> under the supremacy clause. Congress, with the enactment of the
> McCarran-Ferguson Act, has created an exception to the usual rules of
> preemption which preserves state statutes enacted "for the purpose of
> regulating the business of insurance."

*Transit Casualty*, 1996 WL 938126, at *1 (emphasis added). The district court

further noted that "both parties agree that neither ***the Convention*** nor the Federal

Arbitration Act specifically relate to the business of insurance," and that §435.350

RSMo was "enacted for the purpose of regulating the business of insurance." *Id*. at

*2 (emphasis added). Thus, the district court concluded that under the McCarran-

Ferguson Act, the Convention did not preempt §435.350 RSMo. The district court

explained its decision by stating:

> Although the court is aware of the importance of ***the Convention*** and
> the policy concerns expressed in *McDermott*, the court is equally
> aware of the strong federal policy of deferring to state regulation of
> the insurance industry as exhibited in the McCarran-Ferguson Act, 15
> U.S.C. § 1012.

*Id*. at *4 (emphasis added).

On appeal in *Transit Casualty*, this Court made clear that the district court's

opinion encompassed both the FAA and the Convention, though it did not reach

40

the merits of the appeal because it found the remand order non-appealable. The Court stated:

> The district court determined that the McCarran-Ferguson Act's inverse-preemption prevented the parties' reinsurance agreements *from governance by the Convention*. Because the parties' reinsurance agreements *must fall under the Convention* in order for the underwriters to remove under 9 U.S.C. § 205, the district court's finding that *the Convention does not apply* to this cause of action resulted in a lack of removal jurisdiction and necessitated remand.

*Transit Casualty*, 119 F.3d 619, 623-24 (8th Cir. 1997) (emphasis added). The Western District's decision in *Transit Casualty* rejected mandatory arbitration under the Convention, as implemented by the Convention Act, in deference to Missouri's statutory prohibition of mandatory arbitration provisions in insurance contracts. It correctly found that a foreign insurer has no more rights than a domestic insurer to compel arbitration of a policy dispute in Missouri.

## CONCLUSION

Missouri has an important and well-established public policy of securing to its citizens a judicial forum and a jury trial for disputes involving insurance coverage. As this Court recognized over a decade ago in *Standard Security* – four years before the AEGIS policy was executed – §435.350 RSMo implements this public policy by invalidating otherwise mandatory arbitration provisions in insurance policies.

The parties agreed to an endorsement that "notwithstanding anything

41

contained in this Policy to the contrary," any dispute under the policy would be governed by Missouri law and the parties would submit to the jurisdiction of the Missouri courts. This contractual language supersedes the conflicting arbitration provisions in the form policy and was clearly intended to conform the policy's dispute resolution procedures to Missouri's prohibition of mandatory arbitration. Given the resulting absence of a mandatory arbitration agreement in the AEGIS policy, the Court need not address whether Missouri law and public policy are preempted by the Convention as implemented by the FAA. However, the most compelling authority, including that in this Circuit, strongly supports the conclusion that the Convention does not preempt the fundamental policy of Missouri embodied in §435.350 RSMo.

For the foregoing reasons, the district court's order denying AEGIS's motion to compel arbitration should be affirmed.

42

Respectfully submitted,

HAAR & WOODS, LLP


        /s/ Robert T. Haar

Robert T. Haar
Lisa A. Pake
Susan E. Bindler
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
(314) 241-2224
(314) 241-2227 Telecopier
roberthaar@haar-woods.com
lpake@haar-woods.com
sbindler@haar-woods.com

Attorneys for Appellee
Union Electric Company

43

## CERTIFICATE OF SERVICE

  I hereby certify that on January 7, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.



/s/ Robert T. Haar

## CERTIFICATE OF COMPLIANCE

### CERTIFICATION OF TYPE VOLUME LIMITATION

  I hereby certify that the text of the foregoing document as defined by F.R.A.P. 32(a)(7)(B)(iii) contains 9887 words of proportionally spaced text as determined by the automated word count of the Microsoft Word 2007 word processing system and has 14 point print size.  I also certify that the brief has been scanned for viruses and that these documents are virus-free.

/s/ Robert T. Haar

Appellate Case: 12-3546  Page: 55  Date Filed: 01/08/2013 Entry ID: 3992061