No. 12-3546

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

UNION ELECTRIC COMPANY *d/b/a* Ameren Missouri
Plaintiff-Appellee

*versus*

AEGIS Energy Syndicate 1225
Defendant-Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Missouri, Eastern Division

_____

**REPLY BRIEF OF APPELLANT**

_____

Richard N. Dicharry                    Stephen M. Strum
Kyle S. Moran                          Aaron D. French
Marne Jones                            Casey F. Wong
Phelps Dunbar LLP                      Sandberg Phoenix  & von
Canal Place                            Gontard P.C.
365 Canal Street                       600 Washington Ave., 15th Fl.
Suite 2000                             St. Louis, Missouri 63101
New Orleans, Louisiana  70130           (314) 231-3332
(504) 566-1311

*Counsel for Appellant,*
**AEGIS Energy Syndicate 1225**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

SUMMARY OF REPLY...............................................................................1

ARGUMENT.................................................................................................4

    A. The Parties Agreed to Arbitration as Evidenced by
        Condition (M), and That Agreement Does Not
        Conflict with Any Other Provision ....................................................4

        1. Endorsement Two Supplements, But Does Not
           Conflict With, Condition (M) .....................................................5

        2. Endorsement Two's Consent-To-Jurisdiction
           Clause Does Not Involve Arbitration .........................................8

        3. UEC Relies on Distinguishable Cases That Do Not
           Support UEC's Creation of a Non-Existent
           Conflict Between Condition (M) and Endorsement
           Two, or UEC's Notion that Condition (M) is
           "wholly redundant" ...................................................................9

        4. UEC is Not Entitled to Construe the Terms in Its
           Favor .......................................................................................12

    B. Arbitration is Enforceable Under the Convention .........................14

CONCLUSION............................................................................................20

CERTIFICATE OF COMPLIANCE ..........................................................22

CERTIFICATE OF SERVICE....................................................................23

Appellate Case: 12-3546   Page: 2   Date Filed: 02/12/2013 Entry ID: 4004070

# TABLE OF AUTHORITIES

## CASES

*Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193 (Mo. banc 1977) ................................................................................................10

*American Home Assurance Co. v. Pope*, 591 F.3d 992 (8th Cir. 2010) ................13

*Crim v. Nat'l Life and Acc. Ins. Co.*, 605 S.W.2d 73 (Mo. banc 1980) ..................13

*DeAtley v. Mut. of Omaha Ins. Co.,* 2012 WL 5476219 (8th Cir. Nov. 13, 2012) .................................................................................6

*ESAB Group, Inc. v. Zurich Ins. plc.,* 685 F.3d 376 (4th Cir. 2012) ......2, 14, 15, 17

*Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104 (Mo. App. E.D. 2009) ........................................................................................................9

*Henges Mfg., LLC v. Amerisure Ins. Co.,* 5 S.W.3d 544 (Mo. App. E.D. 1999) .................................................................................................7

*In re SRC Holding Corp*, 545 F.3d 661 (8th Cir. 2008) ........................................10

*Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370 (8th Cir. 1983) .................................................................................8

*Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208 (Mo. banc 1992) ...................13

*Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295 (Mo. App. W.D. 2002) ........................................................................................................7

*La. Safety Ass'n of Timbermen Self Insurers Fund v. Certain Underwriters at Lloyd's, London*, 131 S.Ct. 65 (2010) .........................16, 18

*Matter of Arbitration Between England Ship Owners Mut. Ins. Ass'n (Luxembourg) & Am. Marine Corp.*, 1992 WL 37700 (E.D. La. Feb. 18, 1992) ......................................................................15

*Medellín v. Texas*, 552 U.S. 491 (2008) ................................................................16

*Munroe v. Continental Western Ins. Co.*, 837 F.Supp.2d 1045 (E.D. Mo. 2011) ..........................................................................................10

Appellate Case: 12-3546    Page: 3    Date Filed: 02/12/2013 Entry ID: 4004070

*Rodriguez v. General  Acc. Ins. Co. of America*, 808 S.W.2d 379 (Mo. 1991). ....................................................................................13

*Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714 (5th Cir. 2009) ....................................2, 14, 15, 18, 19

*Shahan v. Shahan*, 988 S.W.2d 529 (Mo. 1999). ....................................13

*State Mut. Life Assur. Co. of Worchester, Mass. v. Dischinger*, 263 S.W.2d 394 (Mo. 1954) ......................................................................8

*Stephens v. American Inter. & Ins. Co.,* 66 F.3d 41(2d. Cir. 1995) ............15,16,17

*Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d. Cir. 1995)...................................................................................16

*Sturgeon v. Allied Prof'ls Ins. Co.,* 344 S.W.3d 205 (Mo. App. E.D. 2011) ..................................................................................................19

*Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc.*, 707 F.Supp. 277 (S.D. Tex. 1989)......................................................15

*Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London,* Not Reported in F.Supp., 1996 WL 938126 (W.D. Mo. 1996) .........................................................................................18

*Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392 (Mo. App. W.D. 1998)................................11, 12

## **<u>STATUTES</u>**

9 U.S.C. §§1-16.....................................................................................18

15 U.S.C. §1011 *et seq.* .........................................................................2

28 U.S.C. §1609 ...................................................................................16

Louisiana Revised Statutes § 22:868 ....................................................14

Missouri Uniform Arbitration Act, Missouri Revised Statutes §435.350 RSMo........................................................2, 3, 14, 18

South Carolina Code § 15-48-10 .......................................................14, 17

Appellate Case: 12-3546    Page: 4    Date Filed: 02/12/2013 Entry ID: 4004070

## **TREATIES**

21 U.S.T. §2517, T.I.A.S. 6997 .................................................................................1

Appellate Case: 12-3546   Page: 5   Date Filed: 02/12/2013 Entry ID: 4004070

## SUMMARY OF REPLY

This appeal is a case of first impression for the Eighth Circuit. It involves the enforcement of a mandatory arbitration and forum selection provision in an insurance contract between a domestic insured in Missouri and a foreign insurer. Notwithstanding Missouri's general policy of not recognizing arbitration agreements in insurance contracts, the majority of circuits have held that the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. § 2517, T.I.A.S. 6997 ("the Convention"), trumps state law and requires enforcement of arbitration.

The district court incorrectly interpreted the insurance policy ("the Contract"), finding that the forum selection provision conflicts with the parties' agreement to arbitrate all policy disputes, and therefore takes precedence over the mandatory arbitration provision. AEGIS demonstrated in its principal brief that the district court erred in finding that the forum selection clause and choice of law provision contained in Endorsement Two constituted an agreement to litigate disputes in Missouri state court. Instead, Endorsement Two, by its plain language, represents AEGIS' agreement to submit to personal jurisdiction in Missouri and be bound by Missouri law for arbitral proceedings. This is entirely consistent with the agreement to arbitrate found in Condition (M).

1

AEGIS further demonstrated that, because no provision conflicted with the parties' agreement to submit disputes to arbitration, Condition (M)'s mandatory arbitration agreement should be enforced. Enforcement is appropriate because the parties' Contract dispute falls under the Convention, as the Contract involves a commercial relationship between a foreign insurer and domestic insured. Because the Convention applies, the Missouri Uniform Arbitration Act, Section 435.350 RSMo, does not invalidate the arbitration agreement. As demonstrated in AEGIS' opening brief, this is so because the McCarran-Ferguson Act, 15 U.S.C. 1011 *et seq.* does not inverse preempt an international treaty affecting international commerce, such as the Convention. *ESAB Group, Inc. v. Zurich Ins. plc.*, 685 F.3d 376 (4th Cir. 2012); *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714 (5th Cir. 2009) (en banc), cert. denied, 131 S.Ct. 65 (2010).

UEC filed its Brief of Appellee on January 7, 2013. It included a lengthy "Statement of Facts," in which it alleged a number of facts not in the record and not relevant to the Contract dispute at issue here.[1] UEC also attempts to re-frame

---

[1] UEC's brief contains a number of inaccuracies. For instance, UEC asserts that AEGIS has waived oral argument, but "[b]ecause the final brief in this appeal will be filed by AEGIS, UEC requests 15 minutes of argument to address AEGIS' reply brief…." (Brief of Appellee at i). UEC implies that, because AEGIS has suggested this case can be decided on the briefs and the record, UEC alone should argue before the Court. While AEGIS maintains that oral argument is unnecessary in this matter, AEGIS requests equal time should the Court grant UEC's request for oral argument. UEC also incorrectly asserts that AEGIS' basis

2

the issue, incorrectly asserting that the parties did not agree to arbitrate. UEC supports its assertion that there is no arbitration agreement by arguing that, because Missouri state law does not recognize the validity of arbitration agreements in insurance contracts, the parties could not have agreed to arbitrate. But UEC's argument is based on the mistaken assumption that Missouri state law controls the parties' arbitration agreement, and therefore voids that agreement. The parties' agreement to arbitrate is not governed by the Missouri Uniform Arbitration Act, but instead by federal law, as the parties clearly agreed to arbitrate disputes pursuant to the Convention. (Adden. 6-7).

This Court, therefore, should determine whether the district court erred in interpreting Endorsement Two to be in conflict with the parties' mandatory arbitration agreement. If it is determined, as AEGIS asserts it must be, that Endorsement Two and Condition (M) do not conflict and the parties' agreement to arbitrate remains in effect, a separate but related issue is whether the agreement is enforceable in light of state law and the Convention.

---

for jurisdiction has shifted from federal question jurisdiction to diversity jurisdiction. (Brief of Appellee at 1). AEGIS always has maintained that jurisdiction is appropriate on each ground. (*See* AEGIS' Notice of Removal, Appx. 7).

3

# ARGUMENT

### A.     The Parties Agreed to Arbitration as Evidenced by Condition (M), and That Agreement Does Not Conflict with Any Other Provision

UEC's assertion that the parties could not have agreed to arbitration in light of Missouri state law is misguided.  UEC devotes several pages of its brief to discussing Missouri's stance on the enforceability of insurance agreements, extensively citing insurance regulations and statutes. (Brief of Appellee at 13-16). AEGIS already has acknowledged in its opening brief that Missouri does not favor enforcement of arbitration agreements in insurance policies.  (Brief of Appellant at 31).  UEC's recitation of the state's general position is neither relevant nor helpful to the issue of first impression presented to this Court – whether the parties' agreement to arbitrate pursuant to the Convention, a federal treaty, is enforceable in light of Missouri state law.

UEC incorrectly urges this Court to limit its inquiry to Missouri state law in determining whether the parties agreed to arbitration.  Missouri's policy against enforcing arbitration agreements in insurance contracts does not dispose of the issues here, however.  This Court must determine whether the parties agreed to arbitrate contract disputes (they did) and whether such agreement to arbitrate pursuant to the Convention is reverse preempted by Missouri state law (it is not).

4

1.  Endorsement Two Supplements, But Does Not Conflict With, Condition (M)

Condition (M), which is part of the body of the Contract and entitled "Dispute Resolution and Service of Suit," clearly contains an agreement to arbitrate. It provides three pages of detailed instructions concerning how disputes should be resolved through arbitration, how judgment should be entered on resulting arbitration awards and, if the assistance of courts is required to enforce an award, that the parties agree to submit to jurisdiction in the United States. (Adden. 6-8).

Endorsement Two, however, contains no directives concerning dispute resolution. (Adden. 9). Indeed, Endorsement Two does not contain *any* reference to dispute resolution procedures generally or to arbitration specifically. In its brief, UEC acknowledges that "…Endorsement Two does not refer to arbitration,…" and "[t]he clause [in Endorsement Two] does not refer to arbitration." (Brief of Appellee at 19-20). By UEC's own concessions, Endorsement Two is neither contrary to, nor in conflict with, the mandatory arbitration provision, where "Endorsement Two does not refer to arbitration,…" (*Id*. at 19).

Instead, Endorsement Two performs two functions. First, its governing law provision instructs the arbitration panel that the substantive laws of Missouri should be used to determine policy disputes or the construction of the Contract.

5

Second, Endorsement Two is a bilateral agreement in which UEC and AEGIS agreed to submit to the personal jurisdiction of Missouri courts.[2] Endorsement Two's consent-to-jurisdiction provision ensures both AEGIS and UEC would have the ability to enforce the dispute resolution procedures set forth in Condition (M) . The district court overlooked this critical distinction.

AEGIS has explained why consenting to jurisdiction in Endorsement Two does not displace the dispute resolution procedures in Condition (M) or specifically the mandatory arbitration language above, concluding: "There is no Contract

---

[2] UEC suggests "[t]o the extent AEGIS now attempts to argue interpretations of Endorsement Two that were not presented to the district court in support of AEGIS's motion to compel arbitration, those interpretations should not be considered by this Court." (Brief of Appellee at 19-20). In support of this assertion, UEC cites a recent opinion in which an appellant raised, for the first time, an entirely new argument and theory on appeal. *DeAtley v. Mut. of Omaha Ins. Co.*, 2012 WL 5476219, *2 (8th Cir. Nov. 13, 2012). It is unclear why UEC believes this tenet applies in this case, as AEGIS consistently argued in the district court that the mandatory arbitration provision of Condition (M) did not conflict with Endorsement Two, for example, stating:

> UEC asks this Court to find a conflict between the language in Condition (M) and Endorsement Two where there is none. In Endorsement Two, there is no reference to arbitration, there is no prohibition to arbitration, and there is no indication that Endorsement Two deletes the dispute resolution procedures of Condition (M). A complete reading of Condition (M) and Endorsement Two shows there is no conflict between them, but instead, they are entirely consistent with one another as seen in the language quoted above.

(*See* Appx. 215, AEGIS' Reply in Support of Its Motion to Compel).

6

language or authority to support the position that a consent-to-jurisdiction provision is contrary to, and therefore supersedes, the mandatory arbitration requirements of Condition (M)." (Brief of Appellant at 19). Endorsement Two only will supersede policy language if it is to the "contrary." There must be an actual conflict between Endorsement Two and other policy language for Endorsement Two to supersede and control. Otherwise, Missouri state law requires Endorsement Two to be reconciled and read in harmony with the explicit arbitration agreement contemplated in Condition (M). UEC quietly concedes this argument by failing to address how Endorsement Two's consent-to-jurisdiction provision conflicts with the arbitration provision.

Endorsement Two supplements the arbitration agreement by providing certainty concerning personal jurisdiction. Proper contract interpretation requires the two provisions to be construed together to determine the parties' intent. *Henges Mfg., LLC v. Amerisure Ins. Co.*, 5 S.W.3d 544, 545 (Mo. Ct. App. E.D. 1999); *Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo. App. W.D. 2002). Here, the district court did not attempt to do so and erred when it incorrectly interpreted Endorsement Two as an agreement to litigate contract disputes in state court, in conflict with the prior agreement to arbitrate.

2. <u>Endorsement Two's Consent-To-Jurisdiction Clause Does Not Involve Arbitration.</u>

As UEC acknowledged in its brief, "Endorsement Two does not refer to arbitration." (*see* Brief of Appellee at 19). Despite this acknowledgment, UEC never explains how an endorsement that does not refer to arbitration can be contrary to or conflict with Condition (M)'s mandatory arbitration provision. Indeed, UEC's contention that Endorsement Two overrides Condition (M) would eliminate three pages of the insurance contract. (*see Id.* at 17-8).

This notion is inconsistent with Missouri law, which assigns words their ordinary and usual meaning, such that no substantive clause must be allowed to perish by construction unless insurmountable obstacles stand in the way of any other course. *State Mut. Life Assur. Co. of Worchester, Mass. v. Dischinger*, 263 S.W.2d 394, 401 (Mo. 1954) (internal citations omitted). Courts prefer to interpret different clauses of an insurance policy harmoniously, "to avoid rendering either one nugatory." *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370, 374 (8th Cir. 1983). But here, the district court's interpretation of the Contract incorrectly renders material terms of the Contract nugatory.

Condition (M) provides the "sole and exclusive procedures for the resolution" of any controversy or dispute (Adden. 6), providing for a three-phase dispute resolution sequence: (1) negotiation; (2) mediation; and (3) arbitration (see

8

Adden. 6-8).  Condition (M) thus establishes an alternative dispute resolution scheme that wholly avoids litigation.

The district court never considered, and UEC never explains, how Endorsement Two eliminates not only the requirement of arbitration, but also the requirement of negotiation and mediation.  Again, UEC asks this Court to interpret the parties' Contract in a way that would render useless three pages of alternative dispute resolution provisions (*see* Adden. 6-8).  UEC never explains why Condition (M) and Endorsement Two cannot be read harmoniously, and the district court never tried to read the provisions together.  As explained in AEGIS' opening brief, Endorsement Two and Condition (M) can (and must) be reconciled, read harmoniously, and construed together, rather than eliminating three pages of the parties' Contract. (*See* Brief of Appellant at 19-24).

3. <u>UEC Relies on Distinguishable Cases That Do Not Support UEC's Creation of a Non-Existent Conflict Between Condition (M) and Endorsement Two, or UEC's Notion That Condition (M) is "wholly redundant."</u>

Endorsement Two does not expressly replace the "sole and exclusive" dispute resolution procedures described in Condition (M).  *Compare Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 108 (Mo. App. E.D. 2009) (endorsement at issue unequivocally stated it replaced an exclusion in a commercial general liability "form" policy with a new exclusion).  For Endorsement Two to prevail

9

over Condition (M), there must be an actual conflict between the two. *See Munroe v. Continental Western Ins. Co.*, 837 F.Supp.2d 1045, 1051 (E.D. Mo. 2011) (citing *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo. banc 1977); *see also In re SRC Holding Corp*, 545 F.3d 661, 670-71 (8th Cir. 2008) (analyzing the language of two endorsements and finding they did not conflict in an irreconcilable way).

Furthermore, UEC's arguments about the Contract's "notwithstanding" clause fail to show any actual conflict in the language of the two provisions. Endorsement Two's plain language states in relevant part: "Notwithstanding anything contained in this Policy to the contrary" (Adden. 9). UEC points to no specific conflict between the language in Condition (M) and in Endorsement Two.

In addition, Endorsement Two is not "wholly redundant" when considering the jurisdictional provisions of Condition (M). Endorsement Two contains a bilateral agreement in which both parties consented to submit to personal jurisdiction in Missouri courts. In contrast, under the jurisdictional provisions of Condition (M), only AEGIS agreed (at the insured's request) to submit to the jurisdiction of a court of competent jurisdiction. UEC disregards this material difference. Moreover, even if some of the language in Endorsement Two overlaps with Condition (M), the two provisions are not thereby "wholly redundant" or conflicting. *See SRC Holding Corp*, 545 F.3d at 670-71 (though two endorsements

Appellate Case: 12-3546    Page: 15    Date Filed: 02/12/2013 Entry ID: 4004070

were to "some degree redundant," they did not conflict in an irreconcilable way when applying the plain language of the exclusions).

UEC's reliance upon the easily distinguishable case of *Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392 (Mo. App. W.D. 1998), is also misplaced. *Transit Casualty* addressed a service of suit clause significantly different than the service of suit clause here. As the court there explained, an ambiguity and conflict existed between a service of suit clause and arbitration clause, in that the parties' intention clearly was to give Transit two options: (1) proceed to arbitration; or (2) require the reinsurers to submit to litigation in a U.S. court of competent jurisdiction.

Here, the service of suit clause expressly states it applies only to suits to enforce arbitration:

> Service of Suit. This Service of Suit clause is not intended and shall not be deemed to conflict with or override the obligations of the parties to arbitrate their disputes as provided in this Condition (M). ***This clause is solely intended as an aid to compelling or enforcing such arbitration***, not as an alternative to the Arbitration requirements for resolving disputes under this FOLLOWING FORM AEGIS POLICY as set forth in Condition (M)(3).…

(Adden. 7) (emphasis added). UEC's reliance on *Transit Casualty* is puzzling, because the language of the service of suit clause here emphasizes that the clause only applies to enforce arbitration.

11

The service of suit clause in *Transit Casualty* is completely dissimilar to the language present in Endorsement Two. The clause in *Transit Casualty* provided in pertinent part as follows: "all matters arising hereunder shall be determined in accord with the law and practice of such court." 963 S.W.2d at 395. In contrast, Endorsement Two of the subject policy provides as follows:

> Notwithstanding anything contained in this Policy to the contrary, any dispute relating to this Insurance or to a CLAIM (including but not limited thereto the interpretation of any provision of the Insurance) shall be governed by and construed in accordance with the laws of the State of Missouri and each party agree[s] to submit to the jurisdiction of the Courts of the state of Missouri.

> **ALL OTHER TERMS, CONDITIONS AND LIMITATIONS OF THIS POLICY REMAINED UNCHANGED[.]**

(Adden. 9) (emphasis added).

As discussed above, Endorsement Two contains a governing law provision and a consent-to-jurisdiction provision. Endorsement Two does *not* state that all matters arising under the policy shall be determined in accord with the law and practice of Missouri courts or, as UEC asserts, that the parties agreed to the "litigation of 'Policy Disputes' under Missouri law and in the Missouri courts." (*See* Brief of Appellee at 23). *Transit Casualty* thus has no application here.

4.    UEC is Not Entitled to Construe the Terms in Its Favor

UEC admits the Contract is not ambiguous. It nevertheless argues in the alternative that, if the terms in fact are ambiguous, which neither party has alleged,

Appellate Case: 12-3546    Page: 17    Date Filed: 02/12/2013 Entry ID: 4004070

the Contract must be construed against AEGIS as the insurer. (Brief of Appellee at 25). Missed in the analysis is that such propositions simply do not and cannot apply under the circumstances involved in this case.

Absent an ambiguity, the rules of construction have no application. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999). When interpreting an insurance policy, a court cannot create an ambiguity where none exists to enforce a particular construction which it might feel is more appropriate. *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. 1991). The mere assertion by the insured of a construction contrary to that posited by the insurer does not render language ambiguous. *Crim v. National Life and Acc. Ins. Co.*, 605 S.W.2d 73, 76 (Mo. banc 1980).

Ambiguities are construed against the insurer only if the subject policy language is first determined to be ambiguous, which UEC, a sophisticated public entity, has not alleged. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992). The terms of a policy only are "ambiguous when there is uncertainty in the meaning of words used in the contract, or when the contract terms are reasonably subject to different interpretations." *American Home Assurance Co. v. Pope,* 591 F.3d 992, 999 (8th Cir. 2010) (citing *Krombach*, 827 S.W.2d at 210). Conflicting interpretations do not create an ambiguity. Because

13

the terms of the Contract here are clear and unambiguous, construction against AEGIS is both inappropriate and unnecessary.

## B.   Arbitration is Enforceable Under the Convention

Because the language of the Contract demonstrates that the parties agreed to arbitrate disputes pursuant to the Convention, a related issue is whether the arbitration agreement is enforceable in light of Missouri state law.   AEGIS recognizes that Missouri state law generally prohibits the enforcement of arbitration agreements in insurance policies.   But Missouri's acknowledged public policy against arbitration in insurance contracts is not the end of the inquiry on these facts.   Because AEGIS is a foreign insurer and the arbitration agreement is subject to the Convention, an international treaty, the balance between such a treaty and Missouri's public policy must be weighed.

UEC argues that Missouri state law inverse preempts the Convention by virtue of the McCarran-Ferguson Act.   UEC's reliance on Section 435.350 RSMo is no different than the losing parties' unsuccessful reliance on similar state statutes in *Safety National* (Louisiana Revised Statutes § 22:868) and *ESAB Group* (South Carolina Code § 15-48-10) (*See* Brief of Appellee at 12-6).   This Court, like the courts in those cases, should recognize such statutes as a distraction because they apply only to domestic insurers when the Convention is not at issue.   UEC, however, essentially ignores the weight of authority directly on point and the

14

majority approach. Both the Fourth and Fifth Circuits addressed nearly identical sets of facts, and concluded that arbitration agreements subject to the Convention are not preempted by state laws invalidating arbitration agreements in insurance policies. *ESAB Group,* 685 F.3d at 390; *Safety National,* 587 F.3d at 720.

The McCarran-Ferguson Act operates solely in the realm of domestic interstate commerce and has no bearing on federal regulation of foreign commerce. *ESAB Group,* 685 F.3d at 390. The McCarran-Ferguson Act simply does not apply to contracts made under the Convention because the Convention was intended to apply only to foreign commerce, not to domestic interstate commerce. *Id*.; *Matter of Arbitration Between England Ship Owners Mut. Ins. Ass'n (Luxembourg) & Am. Marine Corp.,* 1992 WL 37700 at *4-5 (E.D. La. Feb. 18, 1992); *Triton Lines, Inc. v. Steamship Mut. Underwriting Assoc.,* 707 F. Supp. 277, 278-79 (S.D. Tex. 1989).

Instead of providing any new reason for rejecting the majority approach, or attempting to distinguish the nearly identical facts presented to the Fourth and Fifth Circuits, UEC relies on a single Second Circuit ruling in which the Court found that the Convention was preempted by state law. (Brief of Appellee at 32-5). In *Stephens v. Am. Inter. Ins. Co.,* 66 F.3d 41, 45 (2d. Cir. 1995), the Second Circuit held that the Convention is not a self-executing treaty, and has legal effect only by virtue of the Convention Act. Citing only the Convention Act and without

providing any substantial analysis, the Second Circuit determined that the Convention was "inapplicable" because the Convention Act was subject to preemption by state law. *Stephens,* 66 F.3d at 45.

UEC fails to address a later Second Circuit ruling that questioned the earlier decision in *Stephens*. In the later decision, the Second Circuit held the McCarran-Ferguson Act does not apply to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1609. *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226 (2d. Cir. 1995). In so holding, the Court recognized its reasoning might extend to the Convention Act, in conflict with its earlier ruling in *Stephens v. American Inter. Ins. Co. See National Distillers,* 69 F.3d at 1233 n.6. Therefore, UEC's reliance on this single case as the guiding authority on reverse preemption is misplaced.

The *Stephens* ruling also is in conflict with the United States' position on the self-executing nature of Article II of the Convention. In an Amicus Brief filed by the Solicitor General, the United States explicitly stated that "[t]he better view of the matter…is that Article II is self-executing…." *See* Brief for United States as Amicus Curiae at *7, *La. Safety Ass'n of Timbermen Self Insurers Fund v. Certain Underwriters at Lloyd's, London*, 131 S.Ct. 65 (2010). (Adden. 11). UEC agrees that the Executive Branch's interpretation of treaties should be afforded considerable weight where there are open questions of law. (Brief of Appellee at 34, n. 5). *See, e.g., Medellín v. Texas*, 552 U.S. 491, 513 (2008).

Appellate Case: 12-3546     Page: 21     Date Filed: 02/12/2013 Entry ID: 4004070

The Second Circuit's holding in *Stephens* also has been rejected by the more recent pronouncements of the Fourth and Fifth Circuits, a fact UEC also ignores. UEC incorrectly asserts that the Second Circuit is the only circuit to have addressed the self-executing nature of the Convention. (Brief of Appellee at 33). The *ESAB Group* court addressed the issue, but did not rule because it determined that the issue did not matter.

In *ESAB Group*, the Fourth Circuit specifically disagreed with the Second Circuit's reasoning, and held that, even if the Convention is not self-executing, the Convention Act *itself* does not fall within the scope of the McCarran-Ferguson Act. 685 F.3d at 389-90. The Fourth Circuit found the implementing provisions of the Federal Arbitration Act, as implementing legislation of a treaty, did not fall within the scope of the McCarran-Ferguson Act. Rather, the Court held the McCarran-Ferguson Act is limited to legislation within the domestic realm. Consequently, the Court found that the South Carolina state law (S.C. Code § 15-48-10) invalidating arbitration agreements in insurance policies did not apply to an insurance coverage dispute under McCarran-Ferguson's inverse preemption rule. Regardless of whether the Convention is self-executing, the Fourth Circuit correctly concluded that the Convention, as an implemented treaty, cannot be preempted by state law under the McCarran-Ferguson Act. *Id*.

The Fifth Circuit likewise has ruled that, because the McCarran-Ferguson

Act does not apply to treaties, nothing in the Convention Act allows state law to inverse preempt it. *Safety National*, 587 F.3d at 718, 732. Specifically, the Fifth Circuit held that the McCarran-Ferguson Act did not cause a Louisiana statuteto reverse-preempt a federal treaty. The Fifth Circuit explained that a treaty, such as the Convention, whether self-executing or not, simply does not constitute an "Act of Congress" within the meaning of the McCarran-Ferguson Act. *Id*. Had the Supreme Court disagreed with this decision, it could have overruled it. Instead, it denied certiorari. *See Louisiana Safety*, 131 S. Ct. 65 (denying writ). Thus, regardless of whether the Convention is self-executing, it is not preempted by the McCarran-Ferguson Act or Missouri state law.

UEC's argument that the McCarran-Ferguson Act preempts the Convention also rests in large part on an unpublished district court decision that did not actually rule on preemption. *Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, Not Reported in F. Supp., 1996 WL 938126 (W.D. Mo. 1996). UEC continues to conflate cases addressing the McCarran-Ferguson Act in relation to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), with those addressing the Convention. The issue in *Transit Casualty* was limited to the McCarran-Ferguson Act's impact on the FAA, not the Convention. *Id*. at *2. Though the district court in *Transit Casualty* did mention the Convention, the issues regarding the Convention as an international treaty were not addressed and

Appellate Case: 12-3546    Page: 23    Date Filed: 02/12/2013 Entry ID: 4004070

they were not integral to the court's ruling. *Transit Casualty* does not address the issues presented by the application of an international treaty and does not control here.

UEC's reliance on *Sturgeon v. Allied Prof'ls Ins. Co.,* 344 S.W.3d 205 (Mo.App. E.D. 2011) is also misplaced. (*See* Brief of Appellee at 12-16). That case involved a domestic insurer and a situation in which California law would have allowed an arbitration clause in an insurance policy to be enforced. The court in *Sturgeon* did not have to contend with a U.S. treaty such as the Convention, the impact of the Supremacy Clause of the U.S. Constitution, or federal public policy supporting the enforcement of commercial international arbitration agreements. As the Fifth Circuit stated in *Safety National,* a state statute such as Louisiana's, South Carolina's, and Missouri's "conflicts with the United States' commitments under the Convention." *Safety National*, 587 F.3d at 720-21. To the extent the district court failed to recognize the impact of the Convention, this Court should reverse and remand.

## <u>CONCLUSION</u>

For the above reasons, and those discussed in AEGIS' Appellant Brief, AEGIS again respectfully requests this Court to reverse the district court's order denying AEGIS' Motion to Compel Alternative Dispute Resolution and remand to the district court with instructions to enter an order compelling UEC to participate in alternative dispute resolution as provided by the Contract and staying the litigation until the conclusion of the arbitration.

20

Appellate Case: 12-3546     Page: 25     Date Filed: 02/12/2013 Entry ID: 4004070

Respectfully submitted, this the 8th day of February, 2012.

By: *Aaron D. French*
Richard N. Dicharry
Kyle S. Moran
Marne Jones
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
504-566-1311
504-568-9130 (fax)
richard.dicharry@phelps.com
kyle.moran@phelps.com
marne.jones@phelps.com
*And*
Stephen M. Strum, #MO37133
Aaron D. French, #MO50759
Casey F. Wong, #MO62258
600 Washington Avenue – 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (fax)
sstrum@sandbergphoenix.com
afrench@sandbergphoenix.com
cwong@sandbergphoenix.com

**Counsel for Appellant**
**AEGIS Electric & Gas International Services**
**Limited, d/b/a AEGIS**
**Energy Syndicate 1225**

Appellate Case: 12-3546    Page: 26    Date Filed: 02/12/2013 Entry ID: 4004070

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 28 (a)(11), the undersigned certifies that Appellant's Brief complies with the typeface and type style requirements of F.R.A.P. 32 (a)(5) and (6).  In accordance with F.R.A.P. 32(a)(7)(B), the undersigned further certifies that this brief meets the type volume limitation because it contains 5017 words. The documents have been scanned for viruses and the brief and addendum are virus-free.


*Aaron D. French*_____

## **CERTIFICATE OF SERVICE**

I certify that a copy of this document was filed electronically with the Clerk of the Court on February 8, 2013, using the Court's CM/ECF filing system, which caused it to be automatically sent to all counsel for Plaintiff-Appellee who are registered to receive electronic filings.

Honorable Jean C. Hamilton
United States District Court
Eastern District of Missouri
111 South 10th Street
St. Louis, MO 63102

Jim Woodward, Clerk
United States District Court
Eastern District of Missouri
111 South 10th Street
St. Louis, MO 63102

Robert T. Haar, Esq.
Lisa A. Pake, Esq.
Susan E. Binder, Esq.
1010 Market Street, Suite 1620
St. Louis, Missouri 63101

Jill B. Berkeley, Esq.
Seth D. Lamden, Esq.
Neal, Gerber & Eisenberg LLP
Two North LaSalle Street
Chicago, IL 60602

*Aaron D. French*_____

Appellate Case: 12-3546   Page: 28   Date Filed: 02/12/2013 Entry ID: 4004070